**Mona J. KNOX, Administratrix of the Estate of Darrel G. Knox, Plaintiff,**

v.

**AC & S, INC., et al., Defendants.**

**No. IP 85–911–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 8, 1988.

Stephen Laudig, Community Defenders, San Diego, Cal., Timothy E. Eble, Thomas H. Hart, Ness Motley Loadholt Richardson & Poole, Barnwell, S.C., for plaintiff.

Raymond H. Modesitt, Patrick Gabbert Wilksinson Goeller & Modesitt, Terre Haute, Ind., for defendant Raymark.

Maxwell Gray, Lowe Gray Steele & Hoffman, Indianapolis, Ind., for defendant Combustion Engineering.

Robert J. Shula, Bingham Summers Welsh & Spilman, Indianapolis, Ind., for defendant Eagle Picher.

Michael A. Bergin, Julia M. Blackwell, Locke Reynolds Boyd & Weisell, Indianapolis, Ind., for defendants AC & S, Armstrong World Industries, Inc., Carey–Canada, Celotex, Fibreboard, Flintkote, GAF, HK Porter, Keene, Owens–Corning, Owens–Illinois, Pittsburgh Corning, Rockwool, T & N.

Martin J. Murphy, Davis and Young Co., L.P.A., Cleveland, Ohio, for defendant Eagle Picher.

Charles T. Jennings, Robert D. Maas, Jennings, Maas & Strickney, Indianapolis, Ind., for defendant Empire Ace.

TINDER, District Judge.

### Entry

This cause comes before the court upon defendants' Motion for Summary Judgment. The court having reviewed the memoranda submitted by the parties and

the evidence referred to therein, now GRANTS in part and DENIES in part defendants' Motion for Summary Judgment.

### Factual Background

This is a wrongful death case arising from the death of Darrel G. Knox on or about April 18, 1986, from mesothelioma, a cancer commonly linked to asbestos exposure. This case was originally filed on June 18, 1985, by Darrel G. Knox and Mona J. Knox for personal injuries resulting from Mr. Knox's exposure to defendants' asbestos-containing thermal insulation products, during the course of his employment as an insulation mechanic. On January 7, 1987, the court granted Mrs. Knox leave to amend her Complaint to allege a cause of action for wrongful death and her Amended Complaint was filed January 8, 1987. Plaintiff's claim for wrongful death sounds in strict products liability and negligence.

### Issues Raised in Defendants' Motion for Summary Judgment

The Motion for Summary Judgment, and the plaintiff's briefs in opposition to summary judgment raise two issues to be considered by the court.

I. Whether the 1986 Amendments to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.*, preempts the State statute of limitations and statute of repose, requiring a discovery statute of limitations for toxic tort actions brought in State Court.

II. Whether the Statute of Repose provision of the Indiana Products Liability Act, Ind.Code § 33–1–1.5–5, operates to bar plaintiff's claim for wrongful death for any asbestos delivery and exposure occurring outside the period of repose, specifically the twelve-year period from 1973 to 1985, when this action was filed by the plaintiff.

### Discussion

Summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is properly granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2511. Summary judgment must be entered against the nonmoving party if, after adequate time for discovery, the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2553. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2553.

### I. Federal Preemption Pursuant to CERCLA

In 1986, CERCLA was amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA). In those amendments, a section was added to CERCLA which plaintiff maintains establishes a discovery statute of limitations for toxic tort actions brought in State Court. The section provides in relevant part:

§ 9658. Actions under State law for damages from exposure to hazardous substances

(a) State statutes of limitations for hazardous substance cases

(1) Exception to state statutes

*In the case of any action brought under State law for personal injury, or property damages, which are*

*caused or contributed to by exposure to any hazardous substance,* or pollutant or contaminant, *released into the environment from a facility, if the applicable limitations period for such action* (as specified in the State statute of limitations or under common law) *provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.*

(b) Definitions

As used in this section—

(1) Subchapter I terms

The terms used in this section shall have the same meaning as when used in subchapter I of this chapter.

(2) Applicable limitations period

The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.

(3) Commencement date

The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

(4) Federally required commencement date

(A) In general

*Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.*

42 U.S.C. § 9658 (emphasis added).

Plaintiff's argument is that § 9658 mandates that a toxic tort case, including an asbestos case, brought in State Court is governed by the federally-required commencement date, the date the plaintiff knew or reasonably should have known that the personal injury or property dam-

age at issue was caused or contributed to by exposure to a hazardous substance. In other words, according to the plaintiff, § 9658 is essentially a federal adoption of a discovery statute of limitations for all toxic tort actions, which functions to preempt any inconsistent state statute, including the Indiana Products Liability Statute of Limitation at issue herein. Ind.Code § 33–1–1.5–5.

In determining whether § 9658 requires a discovery statute of limitations and thus preempts state law, the language of the act must be carefully scrutinized to determine if it extends to this case. The three factors of importance in making that determination are whether the action brought under state law for personal injury or property damage was:

1) caused or contributed to by exposure to a hazardous substance, or pollutant, or contaminant

2) released into the environment

3) from a facility.

Asbestos has been specifically designated as a hazardous substance pursuant to 42 U.S.C. § 9602. (See 40 CFR § 302.4 designating hazardous substances, reportable quantities and notification requirements). Therefore, the plaintiff can satisfy the first prong of § 9658, that decedent's personal injury was caused or contributed to by exposure to a hazardous substance as that term is defined in CERCLA, namely asbestos. In addition, the plaintiff can satisfy the requirement that the exposure to the hazardous substance, asbestos, occur at a facility. The term facility is defined in CERCLA as follows:

(9) The *term "facility means* (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) *any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located:* but does not

include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601(9) (emphasis added).

The cases which construe the CERCLA definition of facility have recognized that it is an expansive definition which extends to include many areas not typically considered a facility. "The definition of 'facility' is necessarily a broad one. It explicitly [includes] ..., among other things, any site or area where a hazardous substance has been deposited, stored, disposed of, or otherwise come to be located." *State v. General Electric Co.*, 592 F.Supp. 291, 295 (N.D. NY 1984) (citation omitted).

The court in *U.S. v. Bliss*, 667 F.Supp. 1298 (E.D.Mo.1987) further elaborated on the expansive nature of the definition given to the term facility.

[S]imply put, the term "facility" includes any place where hazardous substances come to be located. Thus, to show that an area is a "facility," the plaintiff need only show that a hazardous substance has been placed there or has "otherwise come to be located" there.

*Id.* at 1305.

Given the broad nature of the CERCLA definition of facility, Mr. Knox's work site could easily be characterized as a facility, a place where asbestos, a specifically-designated hazardous substance, has come to be located. It should be noted that "consumer products" are specifically exempted from the definition of a facility in CERCLA. The phrase "consumer product" is not defined in the statute and this court is of the opinion that in light of the fact that the insulation products which Mr. Knox used in his work were components of the ultimate product used by a consumer, a building, the insulation probably does not qualify as a consumer product. However, to the extent that insulation is a commercial product, sold between businesses, it might be considered a "consumer product" and thus, the decedent's work site would not qualify as a facility under CERCLA. The final factor to be considered on the question of preemption is whether the plaintiff can satisfy the requirement of a "release into the environment."

The terms "environment" and "release" are defined in the statute as follows:

(8) "environment" means (A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Magnuson Fishery Conservation and Management Act [16 U.S.C.A. § 1801 et seq.], and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States;

(22) "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment, but excludes (A) any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons, (B) emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine, (C) release of source, byproduct, or special nuclear material from a nuclear incident, as those terms are defined in the Atomic Energy Act of 1954 [42 U.S.C.A. § 2011 et seq.], if such release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under section 170 of such Act [42 U.S.CA. § 2210], or, for the purposes of section 9604 of this title or any other response action, any release of source byproduct, or special nuclear material from any processing site designated under section 7912(a)(1) or 7942(a) of this title, and (D) the normal application of fertilizer;

42 U.S.C. § 9601(8) and (22).

It is at this point that the plaintiff's preemption argument becomes most strained. At first glance the definition of release appears broad enough to encompass this situation. The release of the asbestos fibers from the asbestos-containing insulation products at Mr. Knox's work

sites would seem capable of characterization as a CERCLA release, in that the fibers were "emitted" or "discharged" from the insulation. However, a more difficult question is whether this release of hazardous substance from a facility occurred into the "environment." Although "environment" is defined in terms of ambient air, an evaluation of the term environment in terms of the overall purpose and scope of CERCLA indicates that the case at bar is not properly considered within the purview of CERCLA and more specifically, the discovery statute of limitations established in § 9658.

The court is mindful of the fact that the committee report to Congress indicated that the provision was designated to "repeal ... statutes of repose which, in a number of states have the same effect as some statutes of limitations in barring plaintiff's claim before he knows that he has one." *Injuries and Damages from Hazardous Wastes—Analysis and Improvement of Legal Remedies;* A Report to Congress in Compliance with Section 301(e) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 97th Cong., 2d Sess. However, in another portion of that report the 301(e) Study Group noted that the scope of the study and its recommendations were limited to the scope of CERCLA itself. The committee noted that:

> [i]nstances when hazardous substances may be released in other than waste form ... are expressly exempted from the enforcement provisions of the Act. Thus, the emphasis of this report, similar to the emphasis of CERCLA, is on remedying the adverse consequences of improper disposal, improper transportation, spills, and improperly maintained or closed disposal sites.... *[T]he remedies discussed in this report are legal remedies for personal injury, environmental damages and reduction of property value resulting from the spills of hazardous substances and disposal of hazardous wastes for which CERCLA provides cleanup and remedial activities.*

*Id.* (emphasis added).

In the case of *Electric Power Board v. Monsanto,* No. 1–85–634 (E.D.Tenn. Dec. 5, 1986), the court decided that "if this particular ten-year limitation (a statute of repose) were to bar the plaintiffs' claim in this lawsuit, as it appears to be, then this result would be contrary to the intent of the new, preemptive federal legislation, *Id.* at 2. In a subsequent ruling in the *Monsanto* case, Chief Judge Hull decided that the facts of the case did not warrant a finding that it fell within the scope of CERCLA. In making that finding, Judge Hull focused on the important factors to be considered in making a determination of whether a case falls within the scope of CERCLA, namely whether the action is for personal injury or property damage, caused or contributed to by exposure to a hazardous substance, released into the environment from a facility. Thus, Judge Hull implicitly recognized that the scope of the discovery statute of limitations established in § 9658 is limited to the scope of CERCLA itself.

 The definition of release is phrased in terms of spills or disposal of waste rather than in terms of a release of a hazardous substance in other than waste form. Consequently, this court can not recognize § 9658 as being preemptive of the Indiana statute of repose as plaintiff suggests. If § 9658 were so interpreted, it would give this isolated section of the Act a far more expansive effect than that of the balance of the Act. The discovery statute of limitations added to CERCLA in the SARA amendments is limited to personal injury or property damage causes of action under state law in situations where there is an underlying CERCLA action providing for cleanup and remedial activities. This outcome is consistent with the "whole statute" principle of statutory construction, which recognizes that "[a] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." C. Sands, *Sutherland Statutory Construction* § 46.05 (4th Ed.) (citation omitted). Nothing in the language

of the statute indicates that it was intended to have the broad sweeping effect which the plaintiff advances in this case. In fact, the wording of § 9658 and its incorporation of the terms of CERCLA and the CERCLA definition of those terms indicate that the provision was limited to application in the situation where a state cause of action exists in conjunction with a CERCLA cause of action. That not being the case here, the court finds that § 9658 is inapplicable and therefore, that it does not serve to preempt Indiana's statute of repose in this case. The court must now address the issue of whether Indiana's Products Liability statute of repose, Ind.Code § 33–1–1.5–5 operates to bar plaintiff's claim as it relates to decedent's exposure to asbestos outside of the twelve-year period of repose.

## II. Indiana Statute of Repose and its Effect on a Toxic Tort Case

■ The defendants in this case argue that plaintiff's cause of action is time-barred by operation of the Indiana statute of repose, to the extent that the delivery of the asbestos and decedent's exposure thereto occurred more than twelve (12) years prior to the filing of the complaint in this case. The plaintiff contends that the statute of repose does not apply in asbestos cases, in light of Indiana's adoption of a discovery statute of limitations in cases where "an injury to a plaintiff [is] caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance." *Barnes v. A.H., Robins, Co.*, 476 N.E.2d 84, 85 (Ind.1985) and the decision in *Walters v. Owens–Corning Fiberglass Corp.*, 781 F.2d 570 (7th Cir. 1986), finding that Indiana's discovery rule applies in asbestos cases. Essentially, the plaintiff maintains that the adoption of a discovery rule in foreign substance exposure cases creates an implicit exception to the statute of repose.

In beginning the process of determining whether the statute of repose serves as a bar to recovery in this case, the court first notes that there is a split of authority on this issue within this District. In *Covalt v. Carey–Canada*, 672 F.Supp. 367 (S.D.Ind. 1987), the Honorable Larry J. McKinney found that *Barnes* creates an exception to the application of the statute of repose in disease cases resulting from protracted exposure to a foreign substance. *Id.* at 368–69. In the case of *Blacker v. U.S. Mineral Products Co.*, No. IP 81–436–C (Dec. 8, 1987), the Honorable William E. Steckler adopted Judge McKinney's opinion in *Covalt* and reaffirmed the decision that Indiana's statute of repose does not bar a products liability action involving long-term exposure to asbestos. On the other hand, the Honorable S. Hugh Dillin found that the statute of repose does operate as a bar to an asbestos products liability case, as to any delivery and exposure occurring outside the period of repose. *England v. Asbestos Corp. Ltd.*, No. IP 81–163–C (Feb. 13, 1987). Although all three of the above-noted opinions are well reasoned and logical, this court adopts Judge Dillin's reasoning as being more consistent with the task of the Federal District Court sitting in diversity of predicting the Indiana law as it would apply in this case.

The section of the Indiana Code at issue in this case provides:

Statute of Limitations.—This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, any product liability action in which the theory of liability is negligence or strict liability in tort *must be commenced within two [2] years after the cause of action accrues or within ten [10] years after the delivery of the product to the initial user or consumer;* except that, if the cause of action accrues more than eight [8] years but not more than ten [10] years after that initial delivery, the action may be commenced at any time within two [2] years after the cause of action accrues.

Ind.Code § 33–1–1.5–5 (emphasis added).

The statute imposes two bars on a products liability case in Indiana. First of all, it establishes a two (2) year statute of limitations from the time the cause of action accrues. The accrual date in a case such as the case at bar has been clearly established as a discovery statute of limitations.

*See, Barnes,* 476 N.E.2d 84 (Ind.1985); *Walters,* 781 F.2d 570 (7th Cir.1986). That is, in a case such as this one where disease results from protracted exposure to a foreign substance, the statute of limitations begins to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by protracted exposure to a foreign substance. *Barnes,* 476 N.E.2d at 87.

The second bar imposed by the section at issue is typically referred to as a statute of repose. The intent of the statute of repose has been interpreted as that of placing an *absolute* time limit on a products liability action. *Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 418 N.E.2d 207, 210 (1981). A statute of repose serves a function distinct from the one served by a statute of limitations. The statute of repose is a policy statement of the Indiana Legislature, designed with the chief purpose of limiting a manufacturer's liability and its risk of loss for placing a product into the stream of commerce in Indiana. *Pitts v. Unarco Indus. Inc.,* 712 F.2d 276, 280 (7th Cir.1983), *cert. denied,* 464 U.S. 1003, 104 S.Ct. 509, 78 L.Ed.2d 698 (1984). That is, the statute of repose has the purpose of encouraging business in Indiana by placing an outside limit on liability for product defect, in turn recognizing that product designs and safety improve over time.

■ The plaintiff argues that the Indiana Supreme Court decision in *Barnes* in conjunction with Judge McKinney's decision in *Covalt* and Judge Steckler's decision in *Blacker* clearly establish that in disease cases resulting from protracted exposure to a hazardous substance, such as an asbestos case, the discovery statute of limitations creates an exception to the operation of the statute of repose. However, *Barnes* should not be read so expansively. In *Barnes,* both of the claims resulted from exposure to the hazardous substance within the period of repose and thus, the precise question in this case simply was not addressed. In addition, *Dague Corp.,* has clearly established that the statute of repose places an outside limit on liability of

twelve (12) years for a products liability cause of action in Indiana. *Dague* is still the law in Indiana and it dictates that the statute of repose bars an action for damages "incurred by the plaintiff more than ... ten years after the product was first placed in commerce." 418 N.E.2d at 211. There is no language in the statute of repose which permits this court to infer that treatment under *Dague* would differ from the absolute bar to plaintiff's claim for an injury-inflicting defect occurring outside the period of repose in a case where the product causes disease with a long latency period prior to manifestation. Therefore, defendants' Motion for Summary Judgment is GRANTED with respect to any initial delivery and exposure that occurred more than twelve years prior to the filing of this action. That is, the defendants in this case are relieved from any potential liability for the manufacture, sale or delivery of asbestos-containing products placed into the stream of commerce prior to 1973. At this point the court takes notice of the fact that the defendants have submitted affidavits alleging that they ceased the sale, manufacture and delivery of asbestos-containing products outside the twelve-year repose period, namely prior to 1973. The plaintiff has submitted evidence of exposure, and the court assumes, delivery within the repose period; however, plaintiff has failed to distinguish which companies manufactured, sold, and delivered the products used by Mr. Knox in 1973 and thereafter. Thus, the court is unable to say with specificity which, if any, of the defendants are to be afforded the protection of the bar to plaintiff's claim created by the statute of repose. The plaintiff is cautioned that absent manufacturer specific evidence of delivery and exposure in the twelve-year repose period of this case, between 1973 and 1985, the defendants will be dismissed from this case. Consequently, a question of fact remains concerning whether the plaintiff can prove delivery and exposure to any of the defendants' products during the period of repose, so as to avoid the effect of the statute of repose and its absolute bar to plaintiff's cause of action.

Although this court is bound to apply Indiana's statute of repose in this manner, based on the guidance that *Barnes* and *Dague* provide, this ruling is not without its deficiencies. The court first recognizes that as Judge Dillin noted in *England,* the primary purpose of the statute of repose, that of recognizing the improvements of product design and safety that come with time, is not served in cases such as this one. The statute of repose essentially protects a manufacturer from being forever liable for its products, in essence rewarding a manufacturer for ongoing improvements. However, asbestos and substances like it are not subject to design and safety improvements. Asbestos will not and most probably can not improve and with time. In fact, the evidence suggests that asbestos always will be a dangerous product. As a result, it does not appear in any way to fall within the rationale of the rule; thus, the application of the statute in these types of cases creates a harsh result without advancing the countervailing policy interests underlying the adoption of the statute of repose.

The court also recognizes that the severity of the ruling in this case is magnified in light of the long latency period between exposure and manifestation in an asbestos case. Asbestosis is believed to have a manifestation period of between ten (10) to twenty-five (25) years or longer. Thus, in many, if not most instances, the plaintiff's cause of action will be time-barred before he knew or reasonably could have known that such cause of action existed. This result seems wholly inconsistent with our system of jurisprudence. In essence, the decision to adopt a discovery statute of limitations has little practical effect, because where as here, there is a long latency period of disease, the plaintiff is denied his day in court. Essentially, with the adoption of the discovery statute of limitations the plaintiff is given something with one hand, but it is immediately taken away with the other by the operation of the statute of repose. The statute of repose functions to bar the claim even though the plaintiff neither knew nor reasonably could

have known that the claim existed at the time it became time-barred.

It is possible that the Indiana courts in interpreting the legislative intent with respect to the statute of repose would find that the repose period in an asbestos case was "so manifestly insufficient that it represents a denial of justice," *Barnes* 476 N.E.2d at 86, and thus, the Indiana court might adopt the interpretation advanced by the plaintiff in this case. However, as a court sitting in diversity with the guidance of *Barnes* and *Dague,* this court cannot presume to do so.

The court further notes that the question in this case has been certified and the Seventh Circuit has accepted it; therefore an appellate resolution of this issue is forthcoming. The only safe prediction that the court can make is that the Seventh Circuit will certify the question to the Indiana Supreme Court. However, unless and until either the Indiana Supreme Court or the Seventh Circuit determines otherwise, Judge Dillin's astute characterization of this matter as being exclusively within the province of the Indiana Legislature will continue to be followed in this court.