Alfreda Morris sued Dr. Bruce Young, alleging dental malpractice. Ms. Morris's amended complaint alleged that Dr. Young "negligently provided . . . dental services to [Ms.] Morris and negligently breached the acceptable standard of care in providing such dental services in that [Dr. Young] used excessive force in opening [Ms. Morris's] mouth wider than it was capable of opening during the extraction of one of [Ms. Morris's] wisdom teeth when [Dr. Young] should have only used such force to open [Ms. Morris's] mouth to a width that it was capable of opening."
Dr. Young filed an answer denying the allegations of the complaint and filed a motion for summary judgment, with his accompanying affidavit. In his affidavit, Dr. Young swore that at the time he provided dental services to Ms. Morris and at the time he was deposed that he was a duly licensed and practicing dentist, that he saw Ms. Morris in his office on March 14, 1988, and diagnosed her as having an abscessed wisdom tooth and gave her a prescription for antibiotics. On March 21, 1988, Dr. Young extracted Ms. Morris's lower wisdom teeth. Three days later, Ms. Morris returned to his office "complaining of elevated temperature and swelling." He prescribed antibiotics and referred her to Jacksonville Hospital. Dr. Young swore:
 "I am not guilty of negligence or professional neglect in my treatment of [Ms.] Morris. At all times, I exercised *Page 1376 
such reasonable care, diligence, and skill as dentists in the same general line of practice ordinarily have and exercise in a like case.
 "It is my opinion that the dental care and treatment administered by me to [Ms.] Morris was in accordance and conformity with the generally accepted standards, customs, and practice of other dentists. Further, I did not deviate from the standard of care of other dentists similarly situated in the national dental community under similar conditions in and about the treatment of [Ms.] Morris."
This was sufficient to shift the burden of moving forward to Ms. Morris. She recognizes this in her brief, for the opening sentence of her argument is as follows:
 "The issue involved in this case is whether or not the Affidavit of Dr. Robert Fish was sufficient to satisfy the requirements of Rule 56 of A.R.C.P. when viewed in light of the other materials and documents submitted by [Ms. Morris] in opposition to Dr. Young's Motion for Summary Judgment."
In Black v. Reynolds, 528 So.2d 848, 849 (Ala. 1988), this Court held:
 "Once the movant supports his motion [for summary judgment] by affidavits, testimony, or other evidence, . . . the adverse party may not rest upon the allegations or denials contained in his pleadings; he must respond and show that a genuine issue of material fact does exist. . . . Evidence offered in response to the motion, in the form of affidavits or otherwise, must be more than a mere verification of the allegations contained in the pleadings, and must present facts that would be admissible in evidence."
In Wozny v. Godsil, 474 So.2d 1078, 1080 (Ala. 1985), this Court held:
 "Generally, in order to overcome a defendant/physician's motion for summary judgment in a medical malpractice case, the plaintiff must submit competent expert medical testimony to prove that the defendant violated the standard of care set out in Code of 1975, § 6-5-484. . . ."
The pertinent portion of § 6-5-484 is as follows:
 "(a) In performing professional services for a patient, a . . . dentist's duty to the patient shall be to exercise such reasonable care, diligence, and skill as . . . dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case."
In opposition to Dr. Young's motion for summary judgment, Ms. Morris offered the affidavits of Dr. G. Fred Atwell and Dr. Robert Jay Fish.
Dr. Atwell's deposition was factual. Dr. Atwell is a duly licensed and practicing oral surgeon in Anniston, Alabama. He examined Ms. Morris at Jacksonville Hospital, where she had been admitted for facial cellulitis by her family internist. He noted a marked left submandibular and submental space edema and some apparent sublingual space involvement. Ms. Morris exhibited marked trismuses with a mandibular opening of approximately 3-4 mm. He transferred Ms. Morris to Regional Medical Center, performed an incision drainage extraorally in the submandibular region and an intraoral incision in the sublingual space. Ms. Morris improved and was discharged on April 1, 1988. She exhibited a mandibular opening of 5-6 mm. Dr. Atwell's final diagnosis was "trismus secondary to an apparent acute dislocation of the meniscus," which Dr. Atwell swore was in no way contributed to by the treatment and care that Dr. Atwell had rendered to Ms. Morris. This in no way shows a genuine issue of material fact that negligence of Dr. Young proximately caused any "injury that Ms. Morris had sustained."
Dr. Fish's affidavit was anything but factual, but concluded:
 "[T]here are reasonable grounds to believe, and it is his professional opinion based on a reasonable medical probability that Dr. Bruce Young, D.D.S., failed to meet reasonably required and expected standards of dental care and was negligent in his treatment of Alfreda Morris and that such deviation from the expected standards of care resulted in substantial *Page 1377 
losses to the claimant which probably were foreseeable, preventable and avoidable."
Therefore, if the trial court should have considered the opinion testimony of Dr. Fish, then it erred in entering the summary judgment.
Therefore, we examine Dr. Fish's affidavit. In it, he swore that he was a "medical expert" and a specialist in dentistry currently licensed and actively practicing in the State of Florida. Dr. Fish further swore that "no previous medical opinions rendered by him have been disqualified by any court of law." Dr. Fish further swore that his opinion was based upon "certain medical records" of Ms. Morris and "the subject dental chart of [Ms.] Morris and other information." The medical records, dental chart, and other information were not further identified by Dr. Fish in his affidavit. There were no properly authenticated medical records or dental chart of Ms. Morris before the trial court when it entered the summary judgment for Dr. Young. There was nothing else that Dr. Fish purported to rely upon in arriving at his previously quoted opinion.
Attached to the "Amended Motion in Opposition to Defendant's Motion for Summary Judgment" were unauthenticated medical records which were identified in the amended motion as the medical records that formed "the basis of the opinion rendered by Dr. Robert Fish." There was no motion to strike these medical records or the affidavit of Dr. Fish on the ground that Dr. Fish's opinion was based upon evidence that would not be admissible at trial, i.e., unauthenticated medical records. If there had been such a motion, it should have been granted, and we would not consider the affidavit of Dr. Fish or the medical records that formed the basis for the opinions expressed in Dr. Fish's affidavit. McMillian v. Wallis, 567 So.2d 1199 (Ala. 1990); Perry v. Mobile County, 533 So.2d 602, 604-05 (Ala. 1988). However, because there was no motion to strike the affidavit, we must look at the affidavit in light of the medical records attached to the amended motion in opposition to the motion for summary judgment to see if the judgment should be reversed for the court's failure to consider the opinion testimony of Dr. Fish based upon those medical records.Schroeder v. Vellianitis, 570 So.2d 1220, 1223 (Ala. 1990).
An expert witness may give opinion testimony based upon facts of which he has personal knowledge (there is no evidence that Dr. Fish had personal knowledge of any facts involved in this case); or based upon facts in evidence that are assumed in a hypothetical question (there was no hypothetical question involved in this case); or based upon opinions of others that are in evidence, if these are opinions of a type customarily relied upon by the expert in the practice of his profession.W.S. v. T.W., 585 So.2d 26 (Ala. 1991) (Houston, J., concurring in the judgment). Because there was no motion to strike Dr. Fish's affidavit, in accordance with our standard of review that requires us to view the evidence most favorably to the nonmovant (Ms. Morris) (Chilton v. City of Huntsville,584 So.2d 822 (Ala. 1991)), we will consider that Dr. Fish based his opinion upon the facts and opinions in the affidavit of Dr. Atwell and facts and opinions in the medical records attached to the amended motion in opposition to Dr. Young's summary judgment motion. "Said medical records and the Affidavit of Dr. Fred Atwell form the basis of the opinion rendered by Dr. Robert Fish." (Record C-65, "Amended Motion in Opposition to Defendant's Motion for Summary Judgment.")
There is nothing in the medical records or the affidavit of Dr. Atwell that in any way shows that Dr. Young even performed dental work on Ms. Morris, much less what dental work he did perform. Dr. Young's name does not appear in the medical records or in Dr. Atwell's affidavit.
The admitting diagnosis shown in the medical records was "facial cellulitis." The only medical history was: "The patient had extraction of two teeth approximately four days prior to [the admission to Jacksonville Hospital on March 24, 1988,] with results of increase in facial swelling and edema. There was no resolution of the cellulitis *Page 1378 
with I.V. antibiotics"; and "patient had extraction of 2 teeth approximately 4 days prior to admission with resultant marked facial cellulitis. Patient was placed on parenteral antibiotics with no resolution. . . ." The final or discharge diagnosis was: "Facial cellulitis secondary to dental alveolar abscess and trismus secondary to acutely displaced meniscus."
According to 1 Schmidt's Attorneys' Dictionary of Medicine
C-89 (1985), cellulitis is "[a]n inflammation of soft supporting tissue, especially the connective tissue . . . under the skin." An alveolar abscess is:
 "An abscess [a fairly well circumscribed place in the body or in an organ marked by death and disintegration of tissue and, usually the accumulation of pus] located near the socket of a tooth. The socket of a tooth is the hollow space in the jawbone which holds the root of the tooth. There are two types of alveolar abscess. One, the periapical abscess, is located near the apex of the tooth, i.e., near the tip of the root of the tooth. This type is the result of disease involving the pulp of the tooth. The pulp is the soft tissue within the tooth, mainly blood vessels and nerves. The second type of alveolar abscess is known as a pericemental abscess or lateral alveolar abscess, and is located near or along the side of the root of the tooth. This type is due to disease involving the tissues surrounding the root of the tooth."
Schmidt's, A-20 and 21.
Trismus is "[l]ockjaw; ankylostoma; a firm closing of the jaw due to tonic spasm of the muscles of mastication from disease of the motor branch of the trigeminus; usually associated with and due to general tetanus," Stedman's Medical Dictionary 1639 (25th ed. 1990); "motor disturbance of the trigeminal nerve especially spasm of the masticatory muscles, with difficulty in opening the mouth [lockjaw]; a characteristic early symptom of tetanus," Sloan-Dorland Annotated Medical-Legal Dictionary 750 (1987); "[a] spasm of muscles of the lower jaw (the muscles of chewing). While the spasm persists, the mouth cannot be opened. It occurs usually in tetanus." 4 Schmidt's Attorneys'Dictionary of Medicine 144 (1984). Meniscus is "[a] crescent-shaped structure," Stedman's at 944, or "a general term for a crescent-shaped structure of the body,"Sloan-Dorland at 442.
There is nothing in the medical records or Dr. Atwell's deposition, the matters considered by Dr. Fish in formulating his opinion, that show anything that Dr. Young did or did not do to Ms. Morris. Other than the amended complaint, there is nothing in the entire record to substantiate in any way the allegations of Ms. Mossis's complaint that Dr. Young used excessive force in opening Ms. Morris's mouth wider than it was capable of being opened during the extraction of Ms. Morris's wisdom teeth.
Our independent research has revealed one case in which a malpractice action was brought against a dentist alleging negligence in failing to take proper measures to prevent trismus (lockjaw) from developing after the dentist had performed dental work on the plaintiff. Sacawa v. Polikoff,150 N.J. Super. 172, 375 A.2d 279 (1977). However, the resolution of that case does not aid us at all in determining whether there were facts before the trial court from which Dr. Fish could form an admissible opinion.
Considering everything before the trial court that Ms. Morris contends that Dr. Fish considered in forming his opinion (the medical records and the affidavit of Dr. Atwell), we see no way that Dr. Fish could have concluded that Dr. Young did anything to Ms. Morris, much less that he "failed to meet reasonably required and expected standards of dental care and was negligent in his treatment" of Ms. Morris. The trial court properly accorded Dr. Fish's opinion no weight.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and STEAGALL, JJ., concur. *Page 1379