On September 18, 1995, West Berry Becton[1] sued Rhone-Poulenc, Inc., as successor-in-interest to Stauffer Chemical Company, Inc. ("Rhone"), and various employees of Courtaulds Fibers, Inc. ("CFI").[2] On February 6, 1996, Becton amended his complaint to add Courtaulds PLC as a defendant. Becton alleged that while employed with CFI, he sustained various injuries as a result of his continuous exposure to carbon disulfide ("CS2"), a chemical used in a portion of CFI's rayon manufacturing process. Becton was employed at CFI from 1952 to 1986, and his last exposure to CS2 was in 1986, almost 9 years before this action was filed on September 19, 1995.
All of the defendants moved for summary judgments, asserting the statute of limitations as a defense. In opposition to these motions, Becton contended that a "federally mandated discovery rule" contained in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), also known as "the Superfund Act," postponed commencement of the statutory period until Becton knew or should have known that his injuries were related to exposure to hazardous substances, of which CS2 is one. 40 C.F.R. § 302.4. The trial court entered summary judgments for Rhone and Courtaulds PLC.[3] Becton appeals as to those defendants. We affirm.
Ala. Code 1975, § 6-2-38(l), governs actions for personal injury not arising from contract and not specifically enumerated in § 6-2-38. Such actions must be filed within two years of the date of injury. For purposes of an action based on continuous exposure to a hazardous substance, the date of the injury is the day on which the plaintiff was last exposed to the hazardous substance causing the injuries. Hubbard v.Liberty Mutual Ins. Co., 599 So.2d 20 (Ala. 1992); Hillis v.Rentokil, Inc., 596 So.2d 888 (Ala. 1992); American MutualLiability Ins. Co., v. Phillips, 491 So.2d 904 (Ala. 1986);Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979). A plaintiff's ignorance of the fact of injury, if *Page 1136 
there is no fraudulent concealment by the defendant, does not postpone the running of the limitations period. Garrett v.Raytheon Co., supra.
Under the facts of this case, Becton's action is time-barred because it was not filed within two years of the date of the last exposure, unless CERCLA preempts the Alabama "date of injury" rule in favor of the federally mandated "discovery rule." 42 U.S.C. § 9658 (Section 309(a)(1) of the Superfund Act, added by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. 99-499). See, e.g., Tucker v. SouthernWood Piedmont Co., 28 F.3d 1089, 1091 (11th Cir. 1994). Section 9658 essentially prevents a state statute of limitations from beginning to run on actions under state law for personal injuries or property damage "caused or contributed to by exposure to any hazardous substance . . . released into the environment from a facility" until discovery of the causal relationship between the injury and the exposure.42 U.S.C. § 9658(a)(1) and (b)(4)(A).
Although this Court has not previously addressed the applicability of § 9658 to actions for personal injury pending in this State, the defendants argue that even if § 9658 did apply, Becton has not shown that he would come within that statute. Rather, the defendants argue that Becton seeks to apply § 9658 in a context completely outside the scope of CERCLA and the environmental concerns it was designed to reach. They maintain that most federal courts have refused to apply this statute to actions based on personal injuries caused by exposure to some hazardous substance in the absence of the existence of some potential or actual CERCLA liability or claim that has been or could have been asserted in connection with the alleged exposure.
The statute reads, in part, as follows:
 "§ 9658. Actions under State law for damages from exposure to hazardous substances
 "(a) State statutes of limitations for hazardous substance cases
"(1) Exception to state statutes
 "In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
"(2) State law generally applicable
 "Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.
". . . .
"(b) Definitions
"As used in this section —
". . . .
"(2) Applicable limitations period
 "The term 'applicable limitations period' means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.
"(3) Commencement date
 "The term 'commencement date' means the date specified in a statute of limitations as the beginning of the applicable limitations period.
"(4) Federally required commencement date
"(A) In general
 "Except as provided in subparagraph (B), the term 'federally required commencement date' means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were *Page 1137 
caused or contributed to by the hazardous substance or pollutant or contaminant concerned."
Thus, the ultimate issue is whether this lawsuit, which Becton says he brought within two years of the date on which his carbon disulfide-related disease was diagnosed, was timely filed under § 9658 (the federally mandated discovery rule applicable to any action brought under State law for personal injuries contributed to by exposure to hazardous substance released into the environment from a facility).
Most federal courts have limited the application of § 9658 to situations where an underlying CERCLA claim has been made or could exist based on the presence of hazardous waste — where there is an underlying claim dealing with, or cause of action providing for, cleanup and remedial activities. See, e.g., Knoxv. A C S, Inc., 690 F. Supp. 752 (S.D.Ind. 1988); ElectricPower Board of Chattanooga v. Westinghouse Electric Corp.,716 F. Supp. 1069 (E.D.Tenn. 1988), aff'd, 879 F.2d 1368 (6th Cir. 1989), cert. denied, 493 U.S. 1022, 110 S.Ct. 724,107 L.Ed.2d 743 (1990); First United Methodist Church v. United StatesGypsum Co., 882 F.2d 862 (4th Cir. 1989), cert. denied,493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); Covalt v.Carey Canada Inc., 860 F.2d 1434 (7th Cir. 1988).
Although exhaustive research has revealed no cases directly on point or factually similar to this case, we nonetheless find the reasoning and rationale of Covalt v. Carey Canada Inc. (in which the court held that "[t]he interior of a place of employment is not 'the environment' for purposes of CERCLA — at least to the extent employees are the injured persons — and § 309(a)(1) therefore does not apply to Covalt's claim,"860 F.2d at 1439), persuasive in its interpretation of the application of CERCLA:
 "Section 309(a)(1) of the Superfund Act [42 U.S.C. § 9658(a)(1) was] added by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. 99-499 . . . . A place where work is being carried out is not the 'environment' for purposes of the Superfund Act.
". . . .
 "Doubtless some of the language in the United States Code is meaningless. No institution can fill 20 linear feet of shelving with tiny type and commit no redundancies. Yet it is hard to believe that 'released into the environment' is an empty phrase. The focus and structure of CERCLA itself show that it has force. . . . [T]he Superfund Act is about inactive hazardous waste sites. As the House Report on CERCLA put matters, the bill would
 " 'provide for a national inventory of inactive hazardous waste sites and . . . establish a program for appropriate environmental response action to protect public health and the environment from the dangers posed by such sites. . . . [A] major new source of environmental concern has surfaced: the tragic consequences of improperly, negligently, and recklessly [sic] hazardous waste disposal practices known as the "inactive hazardous waste site problem." . . . It is the intent of the Committee . . . to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites.'
 "H.R. Rep. No. 96-1016, 96th Cong.2d Sess. 17, 22 (1980), U.S. Code Cong. Admin. News 1980, pp. 6119, 6124. The structure of CERCLA is what one would expect from the statement of purposes: the Act permits the Environmental Protection Agency to investigate sites it believes are contaminated with hazardous wastes and dangerous; it establishes a register of such places and the Superfund to pay for cleaning them up; it permits the government to direct the former owners and operators of the sites to cleanse them, or to do so itself and collect the costs from former operators without regard to fault. It does not regulate emissions from existing sources (the subject of the Clean Air and Clean Water Acts) or the levels of toxic substances permitted at work (the subject of the Occupational Safety and Health Act).
 "SARA, the source of the text under consideration, does not change the focus or *Page 1138 structure of CERCLA. The provision that became § 309(a)(1) [42 U.S.C. § 9658(a)(1)] originated in the House and had no parallel in the Senate bill. The House Report described CERCLA as establishing the 'Superfund program to clean up abandoned hazardous waste sites,' H.R. Rep. No. 99-253 Part 1, 99th Cong., 1st Sess. 54 (1985), and continues in that vein. Nothing in either the 1986 Amendments or their legislative history hints that EPA is to muscle in on the territory of the Department of Labor, which administers programs dealing with workplace safety. The portion of the House Report describing the new provision on statutes of limitations, id. at 105-06, repeated almost verbatim in the Conference Report, No. 99-962, 99th Cong., 2d Sess. 261 (1986), described the rationale for the amendment:
 " 'State statutes of limitations define the time in which an injured party may bring a lawsuit seeking compensation for his injuries against the party alleged to be responsible for those injuries. These statutes usually run from two to four years, depending on the State. In the case of a long-latency disease, such as cancer, a party may be barred from bringing his lawsuit if the statute of limitations begins to run at the time of the first injury — rather than from the time when the party "discovers" that his injury was caused by the hazardous substance or pollutant or contaminant concerned.
 " 'The study done pursuant to § 301(e) of CERCLA by a distinguished panel of lawyers noted that certain State statutes deprive plaintiffs of their day in court. The study noted that the problem centers around when the statute of limitations begins to run rather than the number of years it runs.
 " 'This section addresses the problem identified in the 301(e) study. While State law is generally applicable regarding actions brought under State law for personal injury, or property damage, which are caused or contributed to by exposure to any hazardous substances, or pollutant or contaminant, released into the environment from a facility, a Federally-required commencement date for the running of State statutes of limitations is established. This date is the date the plaintiff knew, or reasonably . . . should have known, that the personal injury referred to above was caused or contributed to by the hazardous substance or pollutant or contaminant concerned. Special rules are noted for minors and incompetents.'
 "The ' § 301(e) study' to which the Committee referred was conducted by twelve lawyers on the authority of 42 U.S.C. § 9651(e); their charge was to investigate the 'adequacy of existing common law and statutory remedies in providing legal redress for harm to man and the environment caused by the release of hazardous substances in the environment', § 9651(e)(1): in other words, the original focus of CERCLA. Neither the study nor the reports on the 1986 Amendments [suggest] that the federal rule for the commencement of the period of limitations has a broader ambit that the Superfund Act itself — hazardous wastes. To the contrary, the study noted:
 " 'Instances when hazardous substances may be released in other than waste form — i.e., the application of pesticides regulated under the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) — are expressly exempted from the enforcement provisions of the [Superfund] Act. Thus, the emphasis of this report, similar to the emphasis of CERCLA, is on remedying the adverse consequences of improper disposal, improper transportation, spills, and improperly maintained or closed disposal sites.'
 "Injuries and Damages from Hazardous Wastes — Analysis and Improvement of Legal Remedies: A Report to Congress in Compliance with Section 301(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (P.L. 96-510) by the 'Superfund Section 301(e) Study Group,' in Senate Committee on Environment and Public Works, Committee *Page 1139 
Print No. 97-12 part 1, 97th Cong., 2d Sess. 26 (1982) (footnotes omitted).
 "The only snippets of legislative history that cut the other way are not legislative history at all. They appear in affidavits — one by a lobbyist and the other by a Member of the House of Representatives — filed in the district court. It is far from clear that such documents are admissible in evidence. See Specht v. Jensen, 853 F.2d 805 (10th Cir. 1988) (en banc) (legal opinions are not admissible as expert testimony under Fed.R.Evid. 702). At all events, we pay these no heed. Legislative history is valuable only to the extent it reveals the background of the law and the assumptions shared by those who wrote and voted on the bills. It is a contemporaneous record that helps a court reconstruct the meaning of our always-ambiguous language. Statements and thoughts that not only did not but also could not have come to the attention of Congress at the time do not reveal the process of deliberations. By definition, words written after the vote and the President's signature were uninfluential in the process leading to the vote. That is why 'subsequent legislative history' is not helpful as a guide to understanding a law. Pierce v. Underwood, 487 U.S. 552, [564-70] 108 S.Ct. 2541, 2550-51, 101 L.Ed.2d 490 (1988). Even the contemporaneous committee reports may be the work of those who could not get their thoughts into the text of the bill.
". . . .
 ". . . Giving § 309(a)(1) its broadest possible meaning not only preempts wide sweeps of state law — something we do not lightly attribute to Congress — but also thrusts CERCLA into the domain of other federal rules expressly dealing with employees' safety, another thing we do not lightly attribute to Congress."
860 F.2d at 1436-39. (Some emphasis original; other emphasis added.)
See Thompson v. Mindis Metals, Inc., 692 So.2d 805, 806 (Ala. 1997), in which this Court stated:
 "Congress has enacted the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ('CERCLA'). 42 U.S.C. § 9601-9675 (1988). CERCLA greatly expanded liability beyond that provided by the common law, imposing liability for clean-up costs. See 42 U.S.C. § 9607
(1988). Thompson would have this Court expand the common law to, in effect, append private causes of action onto CERCLA. But see Exxon Corp. v. Hunt, 475 U.S. 355, 357 [106 S.Ct. 1103, 1106, 89 L.Ed.2d 364] (1986) (stating that compensation of 'third parties for damage resulting from hazardous substance discharges . . . is clearly beyond the scope of CERCLA'). We decline to accept Thompson's invitation to judicially amend federal environmental laws, when both Congress and the Alabama Legislature remain free to provide private rights of action for environmental damage if they choose to do so."
(Emphasis added.) See, also, Hunt v. Chemical Waste Management,Inc., 584 So.2d 1367, 1381-83 (Ala. 1991), rev'd, 504 U.S. 334,112 S.Ct. 2009, 119 L.Ed.2d 121 (1992), in which this Court, resolving the issue of the constitutionality of a statute imposing a base fee per ton on all waste and substances disposed of at commercial facilities regardless of state of origin, adopted the following portion of the trial court's order:
 " ' "[T]he primary purpose of CERCLA is the prompt cleanup of hazardous waste sites." State of Alabama v. United States Environmental Protection Agency, 871 F.2d [1548] at 1557-58 [11th Cir. 1989] (quoting Dickerson v. Administrator, EPA, 834 F.2d 974, 978 (11th Cir. 1987)) [quoting J.V. Peters Co. v. Administrator, EPA, 767 F.2d 263, 264 (6th Cir. 1985)].' "
584 So.2d at 1383. See also Thompson v. Taracorp,684 So.2d 152, 159 (Ala.Civ.App. 1996), in which the Court of Civil Appeals, resolving the issue of personal jurisdiction, explained the scope of CERCLA as imposing retroactive and strict liability on parties that "either own, operate, or sent hazardous substances to a site that is ultimately found to contain hazardous substances."
We note that Becton cited Tucker v. Southern Wood PiedmontCo., 28 F.3d 1089 (11th Cir. 1994), and Tower Asphalt, Inc. v.Determan Welding Tank Service, Inc., *Page 1140 530 N.W.2d 872 (Minn.App. 1995), in support of his position that "the Eleventh Circuit and most other courts have applied § 9658 even in cases where there are no underlying CERCLA claims." We find that argument without merit.
In Tucker, the plaintiffs brought federal-and state-law claims alleging property damage caused by releases of hazardous substances from a neighboring wood treatment site, formerly operated by the defendant. The defendants moved to restrict the state-law claims to damage that occurred during the four years immediately preceding the filing of the lawsuit. The trial court denied the motion, and the defendant filed an interlocutory appeal, making the argument that statutes of limitations have two independent functions — to define when an action may be brought and to define the period for which damages can be recovered. The trial court rejected this argument as "unsound." However, no issue was raised in Tucker
as to whether § 9658 would apply in the absence of underlying CERCLA claims or CERCLA hazardous waste. In fact, Tucker does not indicate what the federal claims were, although presumably they would have related to remedies under CERCLA because, under the facts of Tucker, the wood treatment site was a hazardous waste site to which CERCLA would apply.
Tower also involved a hazardous waste situation governed by CERCLA. The plaintiff's lessee (the defendant) had spilled hazardous materials that had contaminated the groundwater under the plaintiff's land. Pursuant to a mandate from the Minnesota Pollution Control Agency, the plaintiff had incurred substantial cleanup costs and sought to recover those costs from the defendant. The court held that the plaintiff's claims were time-barred under state law but concluded that § 9658 applied, thereby making the claims timely. That is, the court held that the plaintiff could invoke § 9658 even though it had not alleged a CERCLA claim. Although Tower does not describe the nature of the claims other than to indicate that there were "state law" claims and although, as in Tucker, there is nothing to indicate that the plaintiff had asserted a CERCLA claim,Tower involved property contaminated by hazardous waste that placed it within the purview of CERCLA — that is, the presence of hazardous waste contaminating the groundwater under the plaintiff's property presented a context to which CERCLA remedies might apply.
We also note that Becton cited Kowalski v. Goodyear Tire Rubber Co., 841 F. Supp. 104 (W.D.N.Y. 1994), and Vermont v.Staco, Inc., 684 F. Supp. 822 (D.Vt. 1988), vacated in part on other grounds, by an unpublished order, in support of his position. In Kowalski, the plaintiffs' home and automobile were contaminated by a chemical that the plaintiff/husband was exposed to at work and which he carried out of the workplace on his clothes and on his person. That contamination allegedly caused the plaintiff/wife to develop cancer. The court inKowalski held that the plaintiffs could invoke § 9658 despite the fact that there was no underlying CERCLA action, based on its conclusion that nothing in the language of CERCLA or in the Congressional reports accompanying and explaining the legislation would make an underlying CERCLA action a requirement for the application of that section — that § 9658 did not require either a real or a potential CERCLA remedial action to give it life; and that hazardous chemicals carried out of the facility on the plaintiff/husband's body and clothing were hazardous substances released into the environment from a facility, within the contemplation of CERCLA, thus supporting the application of § 9658. In Staco, the plaintiffs brought a CERCLA action against a corporation for response costs incurred by the state "where mercury was released from [the corporation's] plant on the bodies and clothing of the workers" and the mercury "was finding its way into the workers' septic systems and into the [city] sewer system, as well as the homes and automobiles of the workers, affecting the workers' families and the city itself." The court in Staco found that the mercury was "released into the environment" from a plant when it was transported out of the facility on workers' bodies, garments, and footwear. However, it appears that the Kowalski court and the Staco court ignored other jurisdictions' interpretations *Page 1141 
of the kind of situations CERCLA was designed to remedy.
In this case, it is undisputed that there is no hazardous waste, contaminated property, or unlawful disposal activity involved. Rather, Becton's alleged exposure occurred while he was working at CFI with a chemical lawfully used in the rayon manufacturing process. The Occupational Safety and Health Administration ("OSHA") is charged with regulating exposures in the workplace, 29 C.F.R. § 1910.1000 (establishing limits for workplace exposure to chemicals, including CS2); and emissions from the CFI plant into the atmosphere are regulated by the Clean Air Act, 42 U.S.C. § 7401 through § 7671q. See 42 U.S.C. § 7412(b) (listing CS2 as an air pollutant governed by the Act). See also Covalt, 860 F.2d at 1437, in which the court stated that CERCLA "does not regulate emissions from existing sources (the subject of the Clean Air and Clean Water Acts) or the levels of toxic substances permitted at work (the subject of the Occupational Safety and Health Act ['OSHA'])."
Furthermore, the federally mandated discovery rule of § 9658 has no application to exposure solely within the interior of the workplace. Federal courts have rejected the application of the statute to situations where exposure to a hazardous substance occurs within the confines of the workplace — that is, a release in the workplace is not a release into the environment, as contemplated by § 9658. See, e.g., Covalt v.Carey Canada Inc., 860 F.2d at 1439 ("the interior of a place of employment is not 'the environment' for purposes of CERCLA"); G.J. Leasing Co. v. Union Elec. Co., 54 F.3d 379, 385
(7th Cir. 1995) (release of asbestos inside building, with no leak outside, is not governed by CERCLA);3550 Stevens Creek Associates v. Barclays Bank of California, 915 F.2d 1355,1360-61 (9th Cir. 1990), cert. denied, 500 U.S. 917,111 S.Ct. 2014, 114 L.Ed.2d 101 (1991) (CERCLA is inapplicable to hazardous waste inside a building, the court recognizing that "the 'environment' referred to in [§ 9658] 'includes the atmosphere, external to the building, but not the air within the building' "); Electric Power Bd. v. Westinghouse ElectricCorp., 716 F. Supp. 1069, 1080 (E.D.Tenn. 1988), aff'd,879 F.2d 1368 (1989), cert. denied, 493 U.S. 1022, 110 S.Ct. 724,107 L.Ed.2d 743 (1990) (leak of dielectric fluid inside building was not a "release into the environment contemplated or intended by the CERCLA"), aff'd sub nom. Electric Power Bd.v. Monsanto Co., 879 F.2d 1368 (6th Cir. 1989), cert. denied,493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990); Knox v.AC S, Inc., 690 F. Supp. 752, 756-57 (S.D.Ind. 1988) (employee's exposure to hazardous substance in workplace did not involve release into environment); and First UnitedMethodist Church v. United States Gypsum Co., 882 F.2d at 867, n. 5 (noting with approval Knox and Covalt).
Even assuming that § 9658 was applicable, we would nonetheless affirm the judgment of the trial court because Becton failed to present substantial evidence that his injuries were caused by exposure to a hazardous substance released into the environment. Although Becton presented an affidavit in opposition to the defendants' motion for summary judgment, he merely stated in a conclusory manner that he had filed his action within two years of learning that his injuries were related to exposure to CS2 occurring "inside and outside" the facility, but he provided no facts as to how, when, or where he discovered the causal connection, why he could not have discovered it earlier, or the details of his exposure. See, e.g., Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389,281 So.2d 636 (1973); Federal Savings Loan Ins. Corp. v.Haralson, 813 F.2d 370, 377 n. 7 (11th Cir. 1987). Furthermore, his affidavit provided only conjecture as to some unspecified duration and/or degree of exposure to carbon disulfide in the ambient air, and where, undisputedly, his most significant exposures, if any, occurred in the interior of the building where he was working — and thus were not caused by a "release into the environment," for purposes of § 9658 — that conjecture is insufficient to create a fact question. See, e.g., Riggs v. Bell, 564 So.2d 882 (Ala. 1990).
Moreover, the affidavit of Becton's medical expert filed in opposition to the defendants' motions for summary judgment was, as the trial court aptly held, "completely conclusory, *Page 1142 
speculative, and [lacking of] any proper foundation, in his testimony that, if plaintiff was exposed to carbon disulfide on his work clothing or in the open air outside the facility, 'these exposures would have significantly contributed to his development of a carbon disulfide-related disease' " and it was insufficient to create a fact question. See, e.g., Morris v.Young, 585 So.2d 1374 (Ala. 1991); B.M. v. Crosby,581 So.2d 842 (Ala. 1991); see, also, Viterbo v. Dow Chemical Co.,826 F.2d 420 (5th Cir. 1987); Daubert v. Merrell DowPharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786,125 L.Ed.2d 469 (1993).
Although much criticism has been directed at the federal government for encroaching on the sovereignty of states, in the area of environmental law the federal government has set minimum standards for states to meet or exceed, see, e.g., the Clean Air Act and the Solid Waste Disposal Act. The potential ability of CERCLA's discovery rule to retroactively revive state-law-based claims for harm to persons or property from hazardous waste, which claims had previously expired under otherwise controlling state statutes of limitations, would seem to create several federalism issues as state government and federal government clash over which has the prerogative to control various facets of environmental policy. D. Marsh Prause, Environmental Provincialism, the Commerce Clause, andHazardous Waste: The High Court Hazards A Guess, 27 Wake Forest L. Rev. 949 (1992). The rebirth of federalism in United Statesv. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), may call into question the constitutionality of § 9658. See Adam Babich, Our Federalism, Our Hazardous Waste, and Our GoodFortune, 54 Md. L. Rev. 1516, 1551 (1995). However, because we hold that CERCLA does not apply under the facts of this case, it is unnecessary for us to determine any constitutional issue concerning § 9658's preemption of Alabama's applicable statute of limitations. See Lowe v. Fulford, 442 So.2d 29 (Ala. 1983) (stating that courts are reluctant to, and should not, reach constitutional issues unless to do so is absolutely necessary to the disposition of the case, but rather should decide the merits of the case on nonconstitutional grounds if possible) (cited with approval in Kinard v. Jordan, 646 So.2d 1380, 1383
n. 5 (Ala. 1994)). In light of the legislative purposes of CERCLA in remedying problems with existing hazardous waste sites and imposing liability on the operators and owners of such sites, and the legislative history behind § 9658, which reflects an intent to confine its purposes to the scope of CERCLA itself, we affirm the trial court's judgment.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, and SEE, JJ., concur.
KENNEDY, J., concurs in the result.
[1] West Berry Becton's wife, Mary L. Becton, was also a named plaintiff in this case. Her claim alleged a loss of consortium, based on her husband's personal injuries.
[2] Courtaulds PLC is a public limited company organized and existing under the laws of the United Kingdom. Through a chain of subsidiaries, Courtaulds PLC is the indirect parent of CFI, the Alabama corporation that owns and operates the rayon manufacturing plant in Axis, Alabama, where Becton was employed.
[3] The trial court also entered a summary judgment for defendants James R. Hunt, Herman Ross, Arnold Farmer, Roy Dean, Ed Johnson, Richard Prescott, Ross Laden, Harold Reynold, Colin Jennings, Nick Burroughs (at some points in the record this defendant's name is spelled "Burrows"), and John Stewart (Becton's co-employees) on the ground that the plaintiff West Berry Becton had failed to show by substantial evidence that the defendant coemployees had set out purposefully, intentionally, or by design to injure another. Grimes v.Stewart, 628 So.2d 467 (Ala. 1993); Reed v. Brunson,527 So.2d 102 (Ala. 1988); Merritt v. Cosby, 578 So.2d 1242 (Ala. 1991). According to the case action summary, named defendants Johnny Clark and Jack Davis (also Becton's co-employees) were "stricken by amendment." C.R. 462-63.