**Rudy ACHEE, et al., Plaintiffs,**

v.

**PORT DRUM COMPANY, et al., Defendants.**

**Nos. 1:98–CV–1554, 1:02–CV–118.**

United States District Court,
E.D. Texas,
Beaumont Division.

April 15, 2002.

---

724

Robert C. Hillard, Hilliard & Munoz, Corpus Christi, TX, Russell W. Heald, Hilliard & Heald LLP, Matthew R. Willis, Attorney at Law, Beaumont, TX, Grover G. Hankins, Texas Southern University, Thurgood Marshall School of Law, Houston, TX, for plaintiffs.

John Rolfe Eldridge, Haynes & Boone, Samuel Eugene Stubbs, David Wilks Corban, Fulbright & Jaworski, Arthur Ray Almquist, Mehaffy & Weber, Randall Jerry Heldt, Shell Oil Company, Clyde R. Leuchtag, Shell Oil Company, Houston, TX, for defendants.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON LIMITATIONS*

SCHELL, District Judge.

This matter is before the court on "Defendants' Motion For Summary Judgment Based On Limitations," filed on April 11, 2000 (1:98–CV–1554, Dkt.# 98). Plaintiffs filed a response on May 19, 2000 (Dkt.# 106), and Defendants filed a reply on July 17, 2000 (Dkt.# 121). Plaintiffs then filed a supplemental response on July 31, 2000 (Dkt.# 124). Shortly thereafter all but two Plaintiffs agreed to settle the case with Defendants.

On September 26, 2001, Defendants filed additional briefing in support of their motion for summary judgment (Dkt.# 150), focusing on the claims of the two remaining plaintiffs, Leo Provost ("Provost") and Paula Sinegal ("Sinegal").[1] Provost filed a response on October 9, 2001 (Dkt.# 152), and Defendants replied on October 30, 2001 (Dkt.# 153). Defendants also filed "Additional Briefing In Support Of Defendants' Motion For Summary Judgment On The Federal Claims Of Leo Provost And Paula Sinegal" on March 18, 2002 (1:02–CV–118, Dkt.# 5), and Plaintiffs Provost and Sinegal filed a response to Defendants' additional briefing on March 26, 2002 (Dkt.# 6). Upon consideration of the parties' written submissions, exhibits, affidavits, and the applicable law, the court is of the opinion that "Defendants' Motion For Summary Judgment Based On Limitations" should be GRANTED.

### I. BACKGROUND

The current Plaintiffs are two individuals who live near and allegedly have been injured by actions taken at a plant formerly owned and operated by Port Drum Company ("Port Drum") in Port Arthur, Texas. Port Drum was a company that cleaned and recycled metal barrels for petro-chemical companies. Plaintiffs allege that Port Drum placed hazardous chemicals into the air, soil, and ground water,

---

**1.** Defendants titled this briefing "Additional Briefing In Support Of Defendants' Motion To Dismiss The Claims Of Leo Provost And Paula Sinegal." No such motion to dismiss is on file with the court. On October 1, 2001, the court received a letter from counsel for Defendants stating that the purpose of the briefing is to support Defendants' motion for summary judgment based on limitations. Thus, the court will consider the Defendants' additional briefing, Plaintiff Provost's response to the additional briefing, and Defendants' reply, along with all other written submissions concerning Defendants' motion for summary judgment based on limitations.

which affected Plaintiffs' personal property and caused Plaintiffs numerous personal injuries. Plaintiffs further allege that numerous other Defendants[2] provided Port Drum with steel drums containing hazardous chemicals that injured Plaintiffs in the ways mentioned above. Port Drum ceased its drum processing operations and closed its Port Arthur plant in July of 1990.

A group of approximately 500 Plaintiffs, including the two remaining Plaintiffs, originally filed this suit against Defendants in Texas state court on May 30, 1996, alleging myriad state law claims, such as negligence, negligence per se, negligent misrepresentation, res ipsa loquitur, intentional infliction of emotional distress, nuisance, trespass, fraud, assault and battery, and gross negligence. Plaintiffs also alleged federal claims under Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d *et seq.*, and Title VIII of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.* Defendants removed the case to this court on April 17, 1998. On September 8, 1998, Plaintiffs filed a second amended complaint, adding over 1000 Plaintiffs to the suit. On February 4, 2000, this case was transferred to the undersigned judge. In 2000, counsel for all parties negotiated a settlement covering all Plaintiffs in the case. Shortly thereafter, the remaining Plaintiffs, Provost and, his daughter, Sinegal, opted not to participate in the negotiated settlement; rather, they decided to proceed in the case against Defendants.

On January 9, 2001, this court denied Plaintiffs' motion to sever the claims of Provost and Sinegal, pending its decision on this motion. But, on March 5, 2002, the court granted the parties' "Joint Motion For Severance" and ordered that Provost and Sinegal's claims against Defendants be severed into case number 1:02–CV–118. To facilitate prompt resolution of case number 1:98–CV–1554, the court signed an "Order On Closing Documents" on March 26, 2002, which requires all of the settling parties or their counsel to submit the documents necessary to close that case on or before April 30, 2002. Accordingly, case number 1:98–CV–1554 will soon be closed; the two remaining Plaintiffs and their claims against the same Defendants persist in case number 1:02–CV–118. Although this motion was filed in case number 1:98–CV–1554, it now applies to the instant case.

In their motion, Defendants argue that summary judgment is proper because Plaintiffs Provost and Sinegal are barred from asserting both their state and federal claims against Defendants since the statutes of limitations had run before this suit was filed. Defendants contend that the absolute latest accrual date for Plaintiffs' claims was when Port Drum ceased operations and closed its plant in 1990, roughly six years before Plaintiffs filed the instant suit.

Plaintiffs contend that their causes of action accrued as late as 1995 or 1996 pursuant to the discovery rule under Texas state law or, alternatively, pursuant to the federally required commencement date set forth in 42 U.S.C. § 9658(b)(4)(A). Further, Plaintiffs argue that they filed their claims within the limitations period because the wrongful acts committed by Defendants constitute continuing torts.

---

**2.** For the purposes of this motion "Defendants" are Port Drum Company, Chevron Chemical Company, Chevron U.S.A., Gulf Oil Corporation, Exxon Corporation, Exxon Chemical Company, Exxon Chemical Company, U.S.A., Exxon Chemical Americas, Exxon Chemical Inter America, Inc., Fina Oil and Chemical Company, Huntsman Petrochemical Corporation, Mobil Chemical Company, Inc., Mobil Oil Corporation, Star Enterprise, Sun Company, Inc., Sun Company, Inc. (R & M), Sun Oil Company, Texaco, Inc., Texaco Refining & Marketing, Inc., and Union Oil of California.

Plaintiffs also argue that Defendants fraudulently concealed environmental problems in and around the Port Drum facility, which tolls the running of the applicable statute of limitations. Finally, Plaintiffs assert that they are not barred by the limitations period due to the open courts provision of the Texas Constitution.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.* An issue is material only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this analysis, the court reviews the facts and evidence and draws all inferences in the light most favorable to the nonmovant. *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). However, the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judg-ment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir.1984).

## III. THE APPLICABLE STATUTES OF LIMITATIONS FOR PLAINTIFFS' CLAIMS

The only issue now before the court is whether Plaintiffs' claims are barred by limitations as a matter of law.

### A. *Plaintiffs' State Law Claims*

Defendants' motion for summary judgment argues that Plaintiffs' state law claims are barred by the relevant statutes of limitations. The statute of limitations governing all of Plaintiffs' state law causes of action, except fraud, is set forth in section 16.003 of the Texas Civil Practice and Remedies Code. The Code provides, in pertinent part, that "a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, [and] personal injury … not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM.CODE § 16.003(a) (West 2000). Plaintiffs' fraud cause of action has a limitations period lasting four years after the day the cause of action accrues. *Id.* § 16.004(a). Plaintiffs filed this lawsuit on May 30, 1996. Therefore, all of Plaintiffs' state law claims, other than fraud, are barred if they accrued before May 30, 1994. Plaintiffs' fraud claim is barred if it accrued before May 30, 1992.

### B. *Plaintiffs' Federal Claims*

Defendants' also argue that Plaintiffs' federal claims are barred by the relevant statutes of limitations. As noted above, along with many state law claims, Plaintiffs assert federal claims under Title VI of the Civil Rights Act of 1964, as amended, and Title VIII of the Fair Housing Act of

1968. They allege that Plaintiffs were subjected to "environmental racism" because they "were only allowed to purchase homes or live in the neighborhoods in proximity of Port Drum." Pls.' Second Amen. Compl. at 42–44. In particular, Plaintiffs argue that Defendants violated Title VI because they intentionally discriminated against Plaintiffs when they disposed of hazardous substances at the Port Drum facility. *Id.* Plaintiffs contend that Defendants violated Title VIII because, although Defendants knew that Plaintiffs were underprivileged and forced to live near Port Drum, they "permitted the wastes from their containers to be dumped in ... Plaintiffs' neighborhood" and "maliciously chose to ignore the plight of the neighborhood." *Id.* at 43. Aptly summed up by Defendants, "[t]he acts upon which Plaintiffs establish their federal claims are based on the alleged permitting process by which Defendants obtained authority to conduct activities at the Port Drum facility, the alleged operations of Defendants at the Port Drum facility, and/or the alleged impacts to Plaintiffs' persons and property." Defs.' Additional Br. Supp. Mot. Summ. J. at 4.

### 1. *Plaintiffs' Title VI Claim*

 Defendants allege that section 16.003 of the Texas Civil Practice and Remedies Code promulgates the correct limitations period for Plaintiffs' Title VI claim. Title VI prohibits "any program or activity receiving Federal financial assistance" from discriminating based on "race, color, or national origin." 42 U.S.C. § 2000d. There is no federal statute of limitations provided for claims arising under Title VI. *See id. et seq.* "[I]n cases where there is no federal statute of limita-

tions for a cause of action arising under a federal civil rights statute, the federal courts must apply the most appropriate statute of limitations period provided by state law." *Frazier v. Garrison I.S.D.,* 980 F.2d 1514, 1521 (5th Cir.1993) (finding that claims brought under 42 U.S.C. § 2000d are governed by the same state limitations period applicable to claims brought under 42 U.S.C. § 1983, which are characterized as personal injury claims for the purposes of determining which state statute of limitations applies) (citations omitted). The Fifth Circuit has stated that the two-year Texas state statute of limitations for personal injury actions applies to Title VI claims. *Id.* at 21–22; TEX. CIV. PRAC. & REM.CODE § 16.003(a). Therefore, the same statute that applies to Plaintiffs' state law claims above also applies to their Title VI claim. Because Plaintiffs filed this suit on May 30, 1996, their Title VI claim is barred if it accrued before May 30, 1994.

### 2. *Plaintiffs' Title VIII Claim*

Title VIII of the Fair Housing Act ensures that the government provides "fair housing" and protects against discrimination in the rental or sale of housing. 42 U.S.C. § 3601. Title VIII contains a two-year limitations period: "[a]n aggrieved person may commence a civil action in an appropriate United State district court ... not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this title...." 42 U.S.C. § 3613(a)(1)(A).[3] Similar to Plaintiffs' other claims, their Title VIII claim is barred if the alleged discriminatory practices occurred and terminated before May 30, 1994.

---

**3.** Defendants believe that the former 180 day statute of limitations for claims under Title VIII may be applicable to Plaintiffs because nearly all of the actions complained of oc-

curred before the limitations period was amended. Due to the court's decision in this memorandum and opinion, it need not address this issue.

## IV. ACCRUAL OF PLAINTIFFS' CLAIMS

■ The next task for the court is to determine the date that Plaintiff's causes of action accrued, which is a question of law. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988).

### A. *Plaintiffs' State Law And Title VI Claims*[4]

■ Under Texas state law, a cause of action generally accrues when "a wrongful act causes some legal injury, even if the fact of the injury is not discovered until later." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (citations omitted); *see also Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990) ("Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff.") (citations omitted). "This is generally known as the legal injury rule." *Kuzniar v. State Farm Lloyds*, 52 S.W.3d 759, 760 (Tex.App.-San Antonio 2001).

■ In deciding Defendants' motion for summary judgment, the court must look to the evidence provided by Defendants to see whether it points out the absence of a genuine issue of material fact regarding limitations. Defendants contend that the court must grant summary judgment because there is ample evidence proving that Plaintiffs' state law and Title VI causes of action accrued, at the latest, in July of 1990, when the Port Drum plant was closed. Defendants conclude that after that time they could not have committed any wrongful act causing Plaintiffs a legal injury. As evidence, Defendants proffer the affidavit of Harold M. Eisen ("Eisen"), a member of the Board of Directors of Port Drum since 1968. Defs.' Reply Ex. A at ¶ 3. Eisen specifically states that "Port Drum was closed ... in July of 1990, and the equipment used in Port Drum's drum processing operations was sold in August of 1990. After July of 1990, Port Drum no longer engaged in any drum processing operations." *Id.*[5] Plaintiffs do not present any evidence contradicting Eisen. The

4. Because the Texas statute of limitations for personal injury applies to Plaintiffs' Title VI claims, the court will also look to Texas state law for the rules dealing with accrual and tolling, if applicable. On a more general note, the court finds it difficult to precisely apply the many doctrines which Plaintiffs contend either delay accrual or toll the statute of limitations with regard to their federal claims. This is because Plaintiffs fail to discuss any particular facts or legal arguments in conjunction with these claims; instead, they merely incorporate by reference their previous briefings filed with the court for this motion, all of which discuss the state claims only. This makes it difficult for the court to evaluate any arguments regarding Plaintiffs' federal claims. Nevertheless, the court will do its best to analyze Plaintiffs' federal claims in light of their previous arguments.

5. Defendants also provide a newspaper article published in the PORT ARTHUR NEWS in 1990, which quotes a letter signed by Port Drum sales manager, Connie S. Lowell, stating that

" 'we are closing our plant effective July 13, 1990.' " Defs.' Reply Ex. B. Plaintiffs, however, object to the admissibility of this article on hearsay grounds. "Evidence on summary judgment may be considered to the extent not based on hearsay." *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.1995); *see also Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 510 n. 5 (5th Cir.2001) (opining that statements based on hearsay do not make competent summary judgment evidence). In the present case, the court finds that the particular newspaper article cited is inadmissible hearsay because it is offered to prove when the Port Drum plant closed. Thus, any statements made or alluded to in the article cannot be considered as evidence supporting Defendants' motion for summary judgment. *See McClure v. Mexia Independent School Dist.*, 750 F.2d 396, 401 (5th Cir. 1985); *Dallas County v. Commercial Union Assur. Co.*, 286 F.2d 388, 392 (5th Cir.1961) (stating that newspaper articles are often inadmissible hearsay).

court finds that, on its face, Eisen's affidavit demonstrates that Plaintiffs' claims accrued no later than July or August of 1990. "[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and *even if all resulting damages have not yet occurred.*" *S.V.*, 933 S.W.2d at 4 (citations omitted) (emphasis added). Here, the wrongful acts allegedly committed by Defendants and complained of by Plaintiffs must have caused a legal injury, if at all, before Port Drum ceased operations in July of 1990 and sold all of its drums by August of that same year. For this reason, Plaintiffs' state law claims accrued nearly six years before they filed suit in 1996; thus, Plaintiffs' failed to file their state law claims within the required limitations period.

In addition, Plaintiffs have not asserted a proper claim for fraud. Defendants have adduced summary judgment evidence which proves that Plaintiffs knew of their injuries significantly before the alleged fraud was committed. Furthermore, Plaintiffs' fraud claim is actually a reassertion of its fraudulent concealment defense to the statute of limitations. The court sets forth further analysis on Plaintiffs' fraud claim in conjunction with its discussion of the doctrine of fraudulent concealment on pages 24–25 below.

### B. *Plaintiffs Title VIII Claim*

■ Plaintiffs assert a claim for relief under Title VIII of the Fair Housing Act of 1968, but make no further mention of the exact facts giving rise to this claim in any pleading other than their second amended complaint. Nor do they declare what date they believe to be the accrual date for this claim or, alternatively, why that date should be tolled. As mentioned above, Plaintiffs' Title VIII claim is time-barred if it was brought more than two years "after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this title...." 42 U.S.C. § 3613(a)(1)(A). Plaintiffs do not assert the breach of a conciliation agreement in any of their papers. Hence, the court is only concerned with when the alleged discriminatory housing practices occurred or were terminated.

Defendants argue that any discriminatory housing practices alleged necessarily occurred and/or terminated on or before the Port Drum plant ceased operations and sold its drums in 1990. Plaintiffs submit no evidence suggesting otherwise. In their second amended complaint, Plaintiffs maintain that discrimination occurred because they were permitted to live near the Port Drum facility only, and Defendants disposed of hazardous substances at that facility. However, the undisputed evidence is that Defendants ceased disposing of all chemicals and hazardous substances at least by August of 1990. Accordingly, Plaintiffs' failed to file their Title VIII claim within the limitations period required by statute because the claim accrued almost six years before they filed suit in 1996.

### V. THE TEXAS DISCOVERY RULE, THE FEDERALLY REQUIRED COMMENCEMENT DATE, AND THE CONTINUING TORT DOCTRINE

### A. *The Texas Discovery Rule*

■ Plaintiffs argue that their claims did not accrue by 1990 because the owner of the property, Kansas City Southern Railway Company ("KC Southern"), did not know of the dangers of the Port Drum plant until 1995 or 1996.[6] The Tex-

---

**6.** Plaintiffs neglect to mention whether they maintain that any of the following doctrines apply to alter the accrual date of their federal claims: the Texas discovery rule, the federally required commencement date, the continuing tort doctrine, the doctrine of fraudulent con-

as discovery rule is used to determine when the cause of action accrued. *Porter v. Charter Medical Corp.*, 957 F.Supp. 1427, 1434 n. 4 (N.D.Tex.1997) (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990)) (citation omitted). It is a very limited exception to the general Texas rule of accrual enumerated above. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996); *Moreno*, 787 S.W.2d at 351. The discovery rule applies when two conditions exist: (1) the nature of the injury is inherently undiscoverable; and (2) evidence of the injury is objectively verifiable. *In re Coastal Plains, Inc.*, 179 F.3d 197, 214 (5th Cir. 1999) (quoting *Computer Assocs. Int'l, Inc.*, 918 S.W.2d at 455–56); *S.V.*, 933 S.W.2d at 6. "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V.*, 933 S.W.2d at 7 (citation omitted). For an injury to be inherently undiscoverable, it need not be absolutely impossible to discover. *Id.* Discovery of an injury is dependent on the circumstances in which the injury occurred and plaintiff's diligence. *Id.* "The requirement of objective verifiability requires physical or other evidence, such as an objective eyewitness account, to corroborate the existence of the claim." *In re Coastal Plains, Inc.*, 179 F.3d at 215. When applicable, the discovery rule operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim. *Computer Assocs. Int'l, Inc.*, 918 S.W.2d at 455.

█ The law is not exactly clear as to which party bears the burden regarding the discovery rule exception to the statute of limitations. On the one hand, the Fifth Circuit most recently opined that defendants moving for summary judgment on limitations grounds have the burden of negating the applicability of the discovery rule by establishing that there is no genuine issue of fact as to when Plaintiffs discovered or should have discovered the nature of their injury. *Texas Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir.2001) (citation omitted). On the other hand, two years earlier the Fifth Circuit placed the burden on the party asserting the applicability of the discovery rule. *In re Coastal Plains, Inc.*, 179 F.3d at 214; *see also Federal Deposit Ins. Corp. v. Shrader & York*, 991 F.2d 216, 220 (5th Cir.1993) (stating that, under federal law governing summary judgment procedure, plaintiffs bear the burden of producing evidence in support of their discovery rule argument) (citation omitted). Notwithstanding the contradiction apparent in the cases cited above, the court will defer to recent precedent and proceed under the assumption that Defendants have the burden of negating the applicability of the discovery rule.

█ The court finds that the discovery rule is not applicable in this case because Defendants' alleged wrongful acts and the resulting injuries to Plaintiffs were not inherently undiscoverable. The evidence instead suggests that Plaintiffs discovered their injuries within the prescribed limitations period. Plaintiffs' testimony in each of their depositions shows conclusively that they both knew of their alleged injuries even before the Port Drum plant ceased operations in 1990.[7] Specifically, Provost

cealment, or the Texas open courts provision. The court need not decide this issue because the application of those rules and doctrines would neither alter the court's analysis nor the outcome of this motion. Nonetheless, the court notes that even if the rules and doctrines were to apply to Plaintiffs' Title VI

claim, they most likely would not apply to their Title VIII claim since its statute of limitations is provided by federal law.

7. The court is of the opinion that it is proper to discuss all of Plaintiffs' claims together

states that he suffered from dehydration, shortness of breath, Grave's disease, an enlarged heart, and stomach problems as early as 1979. *See* Additional Briefing in Supp. of Defs.' Mot. at 3, Ex. A. Sinegal alleges that she suffered from migraine headaches beginning approximately in 1980, and had thyroid problems starting in 1991. *Id.* at 4, Ex. B. Defendants contend that Provost's complaints about his injuries demonstrate that he discovered his injuries many years prior to the date on which this suit was filed. They further contend that Sinegal's complaints demonstrate that she discovered many of her injuries before, but all of her injuries at least by 1991. The dates of these injuries alone are not dispositive on the issue of accrual. However, Plaintiffs' knowledge of such injuries becomes increasingly important when considered in conjunction with a similar suit filed against Port Drum in 1985.

On May 16, 1985, a number of plaintiffs, including Provost, filed suit against Port Drum in the United States District Court for the Eastern District of Texas, Beaumont Division. The plaintiffs in that suit alleged that Port Drum violated various federal laws and posed a nuisance by causing "toxic chemicals to enter the soil, water, and air" near the plant. Defs.' Mot. Summ. J. Ex. B. The plaintiffs requested equitable relief and "monetary relief as compensation for their personal injuries and property damages ..., including ... past and future medical expenses, pain and suffering, and diminution in property value...." *Id.* The case was later dismissed. Defendants' allege that because Provost was a plaintiff in the 1985 suit, he knew of his alleged injuries and the cause of such

injuries at that time. Furthermore, they allege that Sinegal knew of at least some of her injuries in 1985 because she was Provost's daughter and had knowledge of the suit filed by her father.

Plaintiffs, however, argue that their claims did not accrue until at least 1995 or 1996 because Defendants wrongful acts and the resulting injuries were inherently undiscoverable until that time period. In their response, Plaintiffs allege that KC Southern was the owner of the property on which the Port Drum plant was located. *See* Pls.' Resp. at 3. On May 1, 1995, KC Southern brought an action against Port Drum pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). In 1996, KC Southern alleged in their amended pleadings that Port Drum " 'caused and allowed materials to be released which contaminated the soil and created a dangerous condition on the property and immediately off the property.' " *Id.* Port Drum counterclaimed against KC Southern, claiming that "the emission, leaking or spilling of hazardous substances in, around, and/or adjacent to the property constituted a release of hazardous substances...." *Id.* at 4. In sum, Plaintiffs essentially argue that because KC Southern did not file suit until 1995, the people who lived in the neighborhood surrounding the former Port Drum plant could not have known about the dangers associated with the plant until 1995.[8]

The court is not persuaded by Plaintiffs argument. In the present case, none of Provost's alleged injuries were inherently undiscoverable in light of the allegations levied against Port Drum in the 1985 law-

because they arise out of the same core set of facts.

8. The language contained in Plaintiffs' allegations obscures the requirements under the Texas discovery rule. Plaintiffs maintain that Provost did not know that his alleged injuries

were *caused* by the Port Drum plant until 1995. Regardless, the discovery rule does not defer the statute of limitations from running until Plaintiffs knew the *cause* of their injuries, it only defers accrual if the injury is inherently undiscoverable.

suit to which he was a party. Moreover, it is of no import that Provost may have thought that his 1985 lawsuit was strictly a "nuisance suit to shut down plant operations." Pl. Leo Provost's Resp. at 2. Regardless of the ultimate objective of the 1985 suit, Provost and the other plaintiffs alleged that they suffered severe personal injury and damage to personal and real property. Defs.' Mot. Summ. J. Ex. B. It is clear to the court that Provost knew of some of his personal injuries as early as 1979, and that he sued Port Drum to recover for personal and property injuries in 1985. Therefore, Provost's claims likely accrued in or before 1985, which is even earlier than July or August of 1990. Accordingly, Defendants' alleged wrongful acts and Provost's injuries were not inherently undiscoverable as late as 1995 or 1996.

Likewise, the court finds that the discovery rule does not defer the accrual of Sinegal's claims because Defendants' alleged wrong and her injuries were discovered by her within the prescribed limitations period. Sinegal is Provost's daughter, and she admits that she knew of and understood the nature of the 1985 lawsuit when it was filed. *See* Additional Briefing in Supp. of Defs.' Mot. at 3, Ex. B. By 1985, Sinegal had reached the age of majority. *Id.* Sinegal knew of some personal injuries to her in the early 1980's. *Id.* Further, Sinegal alleges that she started having thyroid problems in 1991. The court believes that such knowledge would as a matter of law cause a reasonably prudent person to make an inquiry about the existence of any possible claims that would lead to discovery of the claims, and is therefore equivalent to knowledge of the cause of action. *See Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430, 439 (Tex.App.-Fort Worth 1997, pet. denied) (citations omitted). Defendants' alleged wrongful acts and Sinegal's resulting injuries were

not inherently undiscoverable to her until 1995.

Although Plaintiffs assert many more claims against a greater number of parties in this suit, the underlying facts have not substantially changed since the earlier suit was commenced in 1985. In the 1985 suit, the plaintiffs alleged that Port Drum allowed "toxic chemicals to enter the soil, water, and air" near the plant, causing them personal injuries and property damage. Defs.' Mot. Summ. J. Ex. B. In the instant suit, Plaintiffs allege that Port Drum placed hazardous chemicals into the air, soil, and ground water, which affected Plaintiffs personal property and caused Plaintiffs numerous personal injuries, and that the other Defendants provided Port Drum with steel drums containing hazardous chemicals. *See* Pls.' Second Amen. Compl. at 5–10. A comparison of the two cases shows that the core facts giving rise to different causes of action in each case are nearly identical. Thus, in 1985, but at least by 1990 when the plant closed, Plaintiffs should have known of the facts giving rise to their numerous state and federal claims against all Defendants.

Further, the court believes the Defendants' alleged wrongful acts were not inherently undiscoverable to Plaintiffs because the media in Port Arthur began significant coverage of problems caused by the Port Drum facility in 1983. *See* Defs.' Reply at 5 n.4. Due to the nature of this coverage, the court believes that a reasonable person would have discovered Defendants' wrongful acts and the injuries inflicted upon them within the appropriate limitations period. *See Carey v. Kerr-McGee Chemical Corp.,* 999 F.Supp. 1109, 1117 (N.D.Ill.1998) (stating that a reasonable person should have known of his or her claim due to the pervasive media cov-

erage and publicity surrounding the issue).[9]

As a result, Plaintiffs' claims accrued by July or August of 1990 at the latest.[10] Since they waited to file suit in the present case until 1996, their state law claims are barred by the applicable statute of limitations. Defendants therefore have met their initial burden of demonstrating that Plaintiffs did not file suit until after the limitations period had expired. The burden now shifts to Plaintiff to demonstrate through the production of probative evidence that they filed this action within the applicable limitations period.

**B.** *The Federally Required Commencement Date*

In the alternative, Plaintiffs argue that the accrual date for their claims is governed by the federally required commencement date ("FRCD") instead of the statute of limitations established under Texas state law. 42 U.S.C. § 9658(a)(2). The FRCD is an exception to state statutes of limitations:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at

> the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1).

Plaintiffs argue that the FRCD applies to this action. Defendants, however, argue that the FRCD cannot be asserted here because it is irrelevant absent a CERCLA claim, and there is no CERCLA claim in this case. To support their argument, Defendants cite *Becton v. Rhone-Poulenc, Inc.,* 706 So.2d 1134 (Ala.1997). In *Becton,* the Supreme Court of Alabama held that the FRCD was not applicable because there was no underlying CERCLA action. *Becton,* 706 So.2d at 1142. Plaintiffs counter by citing *Kowalski v. Goodyear Tire & Rubber Co.,* 841 F.Supp. 104 (W.D.N.Y.1994), which held the FRCD could apply to an action even if there is no underlying CERCLA action because "nothing in the language of the section ... requires an underlying CERCLA action in order to ... preempt[ ] the state statute of limitations." 841 F.Supp. at 107. However, the court is of the opinion that resolution of this issue is not absolutely necessary to the disposition of this case. Therefore, the court will assume, but not decide, that the FRCD can be asserted by Plaintiffs in the instant case and proceed accordingly.

If the FRCD can be asserted in this action, Plaintiffs claims would accrue when Plaintiffs *knew or reasonably should have known* that the personal injury or property damages were caused or contributed to by the hazardous substance or pollutant or

---

**9.** In this instance, the articles offered by Defendants are not inadmissible as hearsay evidence because the articles are used simply to prove the extent of the media coverage regarding this matter, not to prove the truth of the matter asserted.

**10.** July or August of 1990 were the last dates that Defendants' could have acted to harm

Plaintiffs. That Sinegal allegedly suffered from a thyroid problem beginning in 1991 may or may not push back the date of accrual for some of her claims by approximately one year. Though unlikely under state law, even if her some of her claims did accrue in 1991, those claims were not asserted within the two-year limitations period and, thus, would be time-barred.

contaminant concerned. 42 U.S.C. § 9658(b)(4)(A). In this case, Plaintiffs have the burden of proof to establish the FRCD. *In re Pfohl Bros. Landfill Litigation,* 175 F.R.D. 13, 25 (W.D.N.Y.1997) (citation omitted).

Plaintiffs utilize the same arguments in favor of the FRCD as they used for their Texas discovery rule analysis discussed above. Accordingly, Plaintiffs maintain that their claims did not accrue until at least 1995, which was after KC Southern brought a CERCLA action against Port Drum. The court, however, is not convinced by Plaintiffs argument. As mentioned above, Provost was a plaintiff in a 1985 suit against Port Drum, and Sinegal was aware of the nature of the suit in 1985. Much like the instant suit, the preceding suit alleged that the plaintiffs sustained personal injuries and property damages because Port Drum caused "numerous toxic chemicals to enter the soil, water, and air in and around" its plant. Defs.' Mot. Summ. J. Ex. B. Provost and Sinegal also admit that they suffered certain ailments from the contamination prior to initiating the 1985 suit. Thus, it is logical to conclude that both Provost and Sinegal either knew or reasonably should have known that their injuries were caused or contributed to by the hazardous substance concerned when the suit was brought in 1985. 42 U.S.C. § 9658(b)(4)(A). Moreover, in the unlikely event that Sinegal did not know her injuries were caused by the hazardous substance at that time, she reasonably should have known upon contracting thyroid problems in 1991. Consequently, the FRCD does not apply to this case because the applicable Texas state statute of limitations provides Plaintiffs with a commencement date which is either identical to or later than the FRCD.

## C. *The Continuing Tort Doctrine*

Plaintiffs further allege that their claims have not yet accrued because of the continuing tort doctrine. The limitations period typically begins to run when the claim accrues. *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). A narrow exception to this general rule is found with continuing torts. *Dickson Const., Inc. v. Fidelity and Deposit Co. of Md.,* 960 S.W.2d 845, 851 (Tex.App.-Texarkana 1997) (citation omitted). Conceptually, the continuing tort doctrine is a tolling provision which defines the date of accrual depending on the nature of the tort. *Adler v. Beverly Hills Hosp.,* 594 S.W.2d 153, 155–57 (Tex. Civ.App.-Dallas 1980, no writ) (providing that a continuing tort allows avoidance of a limitations defense, if proven). "A continuing tort is one inflicted over a period of time; it involves wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." *Dickson Const., Inc.,* 960 S.W.2d at 851 (citation omitted). A cause of action for a continuing tort does not accrue until the defendant's tortious act ceases. *Upjohn Co. v. Freeman,* 885 S.W.2d 538, 542 (Tex.App.-Dallas 1994, writ denied).

The court finds that the continuing tort doctrine is not applicable to Plaintiffs' claims in the instant case. Defendants' alleged tortious conduct ceased when the Port Drum plant was closed. In their second amended complaint, Plaintiffs allege that Port Drum placed hazardous chemicals into the air, soil, and ground water, and that the other Defendants provided Port Drum with steel drums containing hazardous chemicals. As these assertions comprise the heart of Plaintiffs' allegations, it is safe to assume that these actions were the actual cause of Plaintiffs' injuries. In other words, Plaintiffs' claims arose from the aforesaid conduct. *See Boudreaux v. Jefferson Island Storage & Hub, LLC,* 255 F.3d 271, 274 (5th Cir. 2001) (citing *Crump v. Sabine River Authority,* 737 So.2d 720 (La.1999) (holding that the continued existence of a canal

diverting water from a plaintiff's property did not constitute continuing tortious conduct because the actual cause of the injury was the digging of the canal)). Thus, Defendants' alleged wrongful conduct desisted completely when the Port Drum plant ceased operations in July of 1990.[11]

Plaintiffs allege that their claims are based on the ongoing injury to them because Defendants failed to remediate the Port Drum plant after it closed. As evidence, Plaintiffs offer the testimony of two witnesses stating that certain test results and government documents indicate that the neighborhood close to the Port Drum plant remained contaminated as of May, 2000. *See* Pls.' Resp. at 5, Ex. 5–6. Under a continuing tort analysis, however, "[e]ngaging in wrongful conduct that causes injury and then refusing to modify, reverse, or cease that conduct for some period of time thereafter does not constitute a continuing tort; rather, the statute of limitations begins to run when the injury is first sustained." *Dickson Const., Inc.*, 960 S.W.2d at 851 (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990)); *see also Sable v. General Motors Corp.*, 90 F.3d 171, 176 (6th Cir. 1996) (citing *Horvath v. Delida*, 213 Mich. App. 620, 627, 540 N.W.2d 760 (Mich.Ct. App.1995) (holding that a continuing wrong is established by continual tortious acts, not by continual harmful effects from an original, completed act)). Thus, although surely of great importance to the residents living near the former Port Drum plant, the fact that the neighborhood near the plant reportedly was contaminated as of May, 2000, does not assist Plaintiffs under a continuing tort analysis. As established above, Plaintiffs' injuries were first sustained before or, at the very latest, during 1990. As a result, the statute of limitations on Plaintiffs' claims accrued by July or August of 1990 at the latest. The court therefore finds that none of Plaintiffs' causes of action fit the definition of a "continuing tort."

Pursuant to the above reasoning, Plaintiffs have not met their burden to demonstrate through the production of probative evidence that the accrual for Plaintiffs' claims should be deferred. There remains no issue of fact to be tried regarding the date of accrual of the applicable statutes of limitations in this case.

## VI. THE DOCTRINE OF FRAUDULENT CONCEALMENT AND THE TEXAS OPEN COURTS PROVISION

### A. The Doctrine Of Fraudulent Concealment

Plaintiffs further contend that, notwithstanding the date their claims accrued, the statute of limitations should be tolled because Defendants fraudulently concealed their claims from them. The doctrine of fraudulent concealment is fundamentally different than the discovery rule, although courts often treat them similarly. Unlike the discovery rule, which determines when the cause of action accrues for purposes of determining when limitations begins to

---

11. *But see Donaldson v. O'Connor*, 493 F.2d 507 (5th Cir.1974) (applying the continuing tort doctrine). In *Donaldson*, the Fifth Circuit held that the cause of action of a mental patient who wrongfully was institutionalized did not accrue until he was released from prison. The court reasoned that "[w]hen a tort involves a continuing injury, the cause of action accrues and the limitation period begins to run, at the time the tortious conduct ceases." *Id.* at 529. This case, however, is factually distinguishable from *Donaldson*. The plaintiff in *Donaldson* was precluded from filing suit while inside the institution. Here, no such bar to filing existed. Provost already participated in a similar suit over fifteen years ago, and Sinegal was aware of the same suit. In fact, Plaintiffs' could have easily filed this suit within the limitations period, but they chose not to do so.

run, the doctrine of fraudulent concealment tolls or suspends the running of limitations after it has begun because the defendant concealed from the plaintiff facts necessary for the plaintiff to know that he or she had a cause of action. *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex.App.-Fort Worth 1997, pet. denied).

The doctrine of fraudulent concealment focuses on whether the plaintiff has exercised due diligence in seeking to learn the facts which would disclose the fraud. *See L.C.L Theatres v. Columbia Pictures Indus.*, 566 F.2d 494, 496 (5th Cir.1978). More precisely, the doctrine of fraudulent concealment tolls the statute of limitations until the fraud is discovered or could have been discovered with reasonable diligence. *Velsicol Chemical Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex.1997) (citation omitted); *Humphrey v. J.B. Land Co.*, 478 F.Supp. 770, 772 (S.D.Tex.1979) (Under the doctrine of fraudulent concealment, "[t]he pertinent inquiry is whether the plaintiff knew or by the exercise of due diligence could have known that he might have a cause of action.").

To defeat summary judgment, fraudulent concealment must be established by the party who seeks to avoid limitations. *S & M Representatives, Inc. v. Hrga*, No. Civ. A. 3:96–CV–1863–G, 1998 WL 267945, at *3 n. 4 (N.D.Tex. May 15, 1998) (placing burden on the party seeking to avoid limitations to establish fraudulent concealment) (citations omitted); *American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex.1994) (holding that burden to plead fraudulent concealment was on plaintiff). A mere response to a motion for summary judgment, without more, does not satisfy this burden of coming forward with sufficient evidence to prevent summary judgment. *Prieto v. John Hancock Mutual Life Ins. Co.*, 132 F.Supp.2d 506, 515 (N.D.Tex.2001) (citing *American Petrofina, Inc.*, 887 S.W.2d at 830).

"Texas courts have adopted several different formulations of the necessary elements for a showing of fraudulent concealment to toll a statute of limitations." *Id.* at 515. For the purpose of deciding this motion, the court will adopt the following formulation of the necessary elements for a showing of fraudulent concealment: (1) actual knowledge by Defendants that a wrong has occurred; and (2) a fixed purpose to conceal the facts necessary for Plaintiffs to know that they have a cause of action. *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413–14 (5th Cir.1993) (citation omitted); *Prieto*, 132 F.Supp.2d at 515 (citing *Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex.App.-Austin 1997, pet. denied)).

Plaintiffs first argue that Defendants are estopped from their limitations defense because Defendants failed to address fraudulent concealment in their motion for summary judgment even though Plaintiffs mentioned it in their second amended complaint. This argument is unpersuasive. Although not expressly addressed in Defendants' motion, Defendants did address the application of the discovery rule in their motion. Such an omission is understandable given the fact that courts often confuse the application of fraudulent concealment with that of the discovery rule, and considering that Plaintiffs merely mentioned fraudulent concealment twice in their second amended complaint without further discussion. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997) (referring to fraudulent concealment cases and discovery rule cases as one in the same). Defendants nevertheless affirmatively address fraudulent concealment in their reply. Moreover, Defendants have already met their burden to demonstrate the ab-

sence of a genuine issue of material fact; thus, Plaintiffs have the burden to establish that fraudulent concealment tolls the statute of limitations because Plaintiffs may not rest on mere denials, but must set forth specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, Defendants failure to address fraudulent concealment in their motion does not preclude them from summary judgment, if proper.

Plaintiffs argue that Defendants continue to deny any environmental problems at the Port Drum plant when such environmental problems exist. They also offer evidence stating that Port Drum representatives made statements misrepresenting the site's environmental situation to a customer who audited the facility in 1990. *See* Pls.' Resp. Ex. 13 at 25–35. Plaintiffs further note that Defendants knew about the site's hazards, but never warned those who lived near the plant. Reviewing the facts and evidence in the light most favorable to Plaintiffs, the court finds that the doctrine of fraudulent concealment does not toll Plaintiffs' claims. This is because Plaintiffs knew or by the exercise of due diligence should have known of their causes of action years before any alleged misrepresentations occurred. As discussed above, at least some of Plaintiffs' injuries allegedly caused by activities at the Port Drum plant occurred in 1979 and the early 1980's. Provost was a party to the 1985 lawsuit against Port Drum alleging environmental malfeasance, and Sinegal alleged injuries in the early 1980's and knew about the 1985 lawsuit when it was filed. Accordingly, Provost knew he had a cause of action in 1985, and Sinegal knew or should have known she had a cause of action in 1985, or at the latest in 1991 when her thyroid problem manifested itself. The 1985 lawsuit and most of Plaintiffs' injuries preceded Defendants alleged misrepresentations to the auditor in 1990, as well as those allegedly made during depositions taken in 1995 and 2000. Pls.' Resp. at 7–8. Thus, the evidence shows that Plaintiffs knew they could assert claims against Defendants during the limitations period regardless of any alleged instances of fraud. Because there is no evidence suggesting fraud delayed Plaintiffs' discovery of their claims, the court holds that Plaintiffs have not sufficiently carried their burden of proving that fraudulent concealment tolls their claims.[12]

Under Texas law, a claim for fraud is distinct from an assertion of fraudulent concealment.[13] *See* Tex. Civ. Prac. & Rem. Code § 16.004(a) (setting forth a limitations period of four years for fraud). In Texas, fraud is a common law cause of action whereas fraudulent concealment is a defense in avoidance of the running of limitations. *Santanna Natural Gas Corp. and Women's Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890

---

**12.** To the extent that Plaintiffs allege Defendants failed to warn the surrounding neighborhood about the plant's hazards, they must also prove that Defendants owed Plaintiffs a duty to disclose the wrong, along with the other two elements of fraudulent concealment. *Prieto,* 132 F.Supp.2d at 516 (stating that the element of "duty to disclose the wrong" is a requirement applicable only to a party relying on passive fraud rather than active misrepresentation) (citation omitted); Pls.' Resp. at 9. Plaintiffs have provided the court with no evidence regarding any of the necessary elements and, thus, have failed to demonstrate that Defendants owed Plaintiffs a duty to disclose the hazards of the plant. Hence, Plaintiffs have not come forward with evidence sufficient to raise a fact issue with respect to their claim for fraudulent concealment.

**13.** For instance, in *L.C.L. Theatres v. Columbia Pictures Indus.,* 566 F.2d 494 (5th Cir. 1978), the Fifth Circuit opined that the plaintiff's cause of action for fraud tolls the statute of limitations. 566 F.2d at 496.

(Tex.App.-Austin 1997, pet. denied). However, the court is of the opinion that, in this case, Plaintiffs' fraud claim is functionally equivalent to and interchangeable with their fraudulent concealment response to Defendants' limitations defense because Plaintiffs ostensibly assert their fraud claim to toll the statute of limitations. Put another way, Plaintiffs' assert fraud exclusively to prove fraudulent concealment. This means that, here, both fraud and fraudulent concealment have the same overall effect on Plaintiffs' ability to maintain this action.

A cause of action based on fraud accrues when the fraud is discovered, or by the exercise of reasonable diligence should have been discovered. *Little v. Smith*, 943 S.W.2d 414, 420 (Tex.1997). To assert a valid cause of action for fraud, the necessary elements are as follows: (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (5) the party suffered injury as a result. *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 498 (N.D.Tex.2001). In their second amended complaint, Plaintiffs plead a cause of action for fraud against Defendants, alleging that Defendants "undertook and carried out acts constituting fraud," in that they "made material representations ... that were false and which were relied upon by Plaintiffs to their detriment." Pls.' Second Amen. Compl. at 31.

Here, Plaintiffs fail to allege any instances of fraud;[14] thus, the court will assume that Plaintiffs mean to attack the "misrepresentations" discussed in reference to their fraudulent concealment defense. Indeed, Plaintiffs fail to treat their fraud claim and their fraudulent concealment claim as mutually exclusive. The court nonetheless finds that Plaintiffs' claim for fraud does not operate to toll or alter in any way the limitations period. The analysis is identical to the court's fraudulent concealment analysis above. Defendants have proven conclusively that Plaintiffs knew or by the exercise of due diligence should have known that they might have a cause of action before the alleged misrepresentations occurred. Because of this knowledge, Plaintiffs could not have suffered any injury as a result of fraud as alleged. Therefore, Plaintiffs' claim for fraud does not affect the outcome of this case.

### B. *The Texas Open Courts Provision*

In Plaintiffs' second amended complaint, they invoke the open courts provision of the Texas Constitution "in response to any claim by any of the Defendants that any of the Plaintiffs' causes of action are barred by limitations...." Pls.' Second Amen. Compl. at 4. They do not elaborate on this argument. "The 'open courts' provision promises that meaningful remedies must be afforded, 'so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress.'" *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 458 (Tex.1996) (citations omitted); *see also* TEX. CONST., art. III, § 13.

The court observes that the open courts provision does not operate to toll the running of the applicable statute of limitations

---

**14.** In addition, it is doubtful that Plaintiffs properly pleaded their fraud claim under Rule 9 of the Federal Rules of Civil Procedure.

Rule 9 requires that "the circumstances constituting fraud ... shall be stated with particularity" when pleaded. FED.R.CIV.P. 9(b).

until a plaintiff discovers his or her cause of action. *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 445 (Tex.App.-Fort Worth 1997, pet. denied). Instead, "it requires only that a plaintiff be given a reasonable time to discover the injury and bring suit before the cause of action is barred by limitations." *Id.* (citing *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985)) (citations omitted). Thus, the court must determine what constitutes a reasonable time for Plaintiffs to have filed suit after they discovered their injuries.

In this case, Plaintiffs use the open courts provision to challenge section 16.003 of the Texas Civil Practice and Remedies Code.[15] This statute prescribes a two year limitations period. The primary purpose of a statute of limitations is to prevent litigation of stale claims. *S.V.*, 933 S.W.2d at 6 (citation omitted). As such, "preclusion of a legal remedy alone is not enough to justify a judicial exception to the statute." *Id.*

As mentioned above, the court has concluded that Plaintiffs claims are barred by the applicable statutes of limitations. This is because the uncontradicted summary judgment proof submitted by Defendants establishes that Plaintiffs knew of their injuries between five and sixteen years before they filed this suit. It is not reasonable that Plaintiffs waited five to sixteen years to file suit after discovering their injuries because their claims were stale. *See Hall v. Dow Corning Corp.*, 114 F.3d 73, 77 (5th Cir.1997) (holding that a fifteen month delay between discovery of claims and filing suit is unreasonable); *Computer Assocs. Int'l, Inc.*, 918 S.W.2d at

458 (holding application of a two-year statute of limitations is not unreasonable or arbitrary when balanced against the purpose and basis of the statute). Plaintiffs easily could have filed their claims within the applicable limitations period supplied by the Texas legislature. Therefore, the court holds as a matter of law that applying the appropriate statutes of limitations to Plaintiffs' claims does not violate Plaintiffs' rights created by the Texas open courts provision.

## VII. CONCLUSION

After reviewing the record, the court concludes that, when viewed in the light most favorable to Plaintiffs, the summary judgment evidence supports the finding that there are no genuine issues of material fact regarding whether Plaintiffs' claims are time-barred. As a result, both Plaintiffs' state and federal claims are time-barred. Therefore, "Defendants' Motion For Summary Judgment Based On Limitations" is hereby GRANTED as to all of Plaintiffs' claims. It is so ORDERED.

---

15. In theory, Plaintiffs also challenge the statute of limitations pertaining to their fraud claim, section 16.004 of the Texas Civil Practice and Remedies Code. However, since the court finds that Plaintiffs' fraud claim is the same as its fraudulent concealment defense, the court need not consider whether section 16.004 violates the open courts provision.

Additionally, Plaintiffs may be challenging the Title VIII limitations period in 42 U.S.C. § 3613. As previously discussed, this claim is solely based in federal law and is governed by a federally mandated statute of limitations. Consequently, the Texas open courts provision does not apply to Plaintiffs' Title VIII claim.